[No. 33492-1-I.    Division One.    June 17, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR
LEE SMITH, JR., *Appellant.*

*Mark K. Yamashita* and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Patricia A. Eakes, Deputy*, for respondent.

BECKER, J. — Arthur Lee Smith, Jr. appeals his conviction for second degree rape. He assigns error to admission of statements the victim made to others on the night of the rape, and also alleges prosecutorial misconduct. We hold: (1) the court properly admitted the victim's statements under exceptions to the hearsay rule; (2) they were not needlessly cumulative; (3) the State did not comment on Smith's right to be present at trial; and (4) comment on Smith's failure to call his spouse as a witness, while improper, did not have a substantial effect on the outcome of the case. Accordingly, we affirm.

I.

The victim, Ms. Brown, testified that she met the defendant one afternoon at a tavern in Seattle. Smith told Brown that his name was "Nick." After talking for several hours, the two decided to go out for dinner. On the way, they stopped at Brown's apartment. Brown offered Smith a beer and went to use the bathroom.

While Brown was using the toilet, Smith came into the bathroom, grabbed her by the neck and said, "Do as I say or I'll kill you." He then forced her into the bedroom and committed vaginal and anal rape. When he was finished, Smith left the apartment.

A friend of Brown's testified that Brown called her that evening. Crying, Brown gave a "disjointed" account of what happened. At the friend's urging, Brown called 911. A tape of the call, which the jury heard, shows that Brown was sobbing and hysterical.

Police testified that when they arrived at Brown's apartment, she was crying so hard she could hardly speak. Brown would not respond to male officers, or allow them to touch her. Finally, a female fire fighter was able to convince Brown she should go to Harborview Hospital.

Dr. Alison Guile testified that she examined Brown that evening. Brown had fresh bruises on her forearms, chest and lower back, and fresh scratches on her chest and back.

The tissue surrounding Brown's anus and vagina was badly bruised and swollen. Dr. Guile testified that Brown's trauma was "far worse" than that of any patient she had examined before. Brown was visibly upset and experiencing a great deal of pain.

Smith had taken a credit card from Brown's purse while inside her apartment. The next day, Smith and his wife visited a travel agent, posing as Mr. and Mrs. Brown. The Smiths booked a four-day trip to Disneyland, using Brown's credit card as payment, but later canceled the trip.

Police searched for Smith over the next few months. Not knowing his real name, they were unable to find him. In August, Brown happened to see Smith coming out of an apartment building on Queen Anne. The property manager identified Smith to the police, but Smith fled the apartment before police could capture him.

As a result of a nationwide fugitive alert, police in Virginia eventually arrested Smith. A Seattle police detective flew to Virginia to transport Smith back. While talking with the detective on the plane, Smith said that he knew he had a "sexual problem with women," and that he was "in the situation he was in now" because treatment attempts had failed. Smith also said his wife did not know what he had done, and he wanted to keep her out of it.

The defense theory at trial was that Brown had consensual sex with Smith, immediately regretted it, and then fabricated the rape allegation. Smith testified that when he went to Brown's apartment, she gave him a beer, poured herself a glass of wine, and joined him on the couch. Eventually they went into the bedroom and had vaginal intercourse that was "totally consensual." Smith admitted that he stole the credit card from Brown's purse while she was in the bathroom. He said the reason he later fled was because he had stolen the card, and because he was on parole from a felony conviction in Alaska.

The jury found Smith guilty of second degree rape.

## II.

In addition to Brown's testimony describing the alleged rape, the trial court admitted statements she made to others on the night in question. The court admitted Brown's statements during the telephone call to her friend, a tape of the 911 call, and her statements to a police officer under the excited utterance exception to the hearsay rule.[1] The court admitted Brown's statements to Dr. Guile under the medical diagnosis exception.[2]

Relying on *State v. Harper*,[3] Smith argues Brown's statements to others should have been excluded because they merely served to bolster Brown's trial testimony.

A prior statement, if "offered in evidence to prove the truth of the matter asserted", is hearsay.[4] The general rule, ER 802, is that hearsay is inadmissible. There are two distinct rationales by which a witness' prior consistent statement may be admissible notwithstanding the general rule. First, the statement may satisfy one of the exceptions to the hearsay rule found in ER 803. Second, the statement may not be hearsay at all if offered to rebut impeachment. To be admissible by the second rationale, the statement must meet the ER 801(d)(ii) definition of non–hearsay, as a prior consistent statement "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive".

*State v. Harper* addressed a misapplication of the second rationale described above. In a trial of alleged child molestation, the court allowed a caseworker to repeat what the child told her about the incident several months after it

---

[1]ER 803(a)(2).

[2]ER 803(a)(4).

[3]*State v. Harper*, 35 Wn. App. 855, 670 P.2d 296 (1983), *review denied*, 100 Wn.2d 1035 (1984).

[4]ER 801(c).

occurred. *Harper* held this testimony by the caseworker should have been excluded as irrelevant because it did not specifically rebut the attempted impeachment of the victim.[5] "Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.' "[6] Lacking relevance to any attempted impeachment, mere repetition of the child's version of events improperly and prejudicially bolstered the child's credibility.

■ The analysis in *Harper* applies when the prior statement is offered under ER 801(d)(ii) as non–hearsay. The rationale for admissibility in that case is that the evidence "counteracts a suggestion that the witness changed his story" and thus is relevant to the credibility of the witness' trial testimony.[7] The analysis in *Harper* does not apply when the prior statement is offered under ER 803. The rationale for admissibility in this situation has nothing to do with the credibility of the witness at trial, and indeed the statement may be admitted even if the declarant does not testify at trial. Instead, the rationale is that the statement, though hearsay, has enough reliability to serve as independent proof of the matter asserted. This distinction is implicit in *Harper*. The court upheld the admission of excited utterances by the victim, without considering whether they served to rebut any alleged motive to fabricate.[8]

Brown's statements to her friend, to the police officer, and to the doctor did involve a certain amount of repetition. But Smith concedes the statements fit the criteria for

---

[5]*Harper*, 35 Wn. App. at 857–58. *See also State v. Alexander*, 64 Wn. App. 147, 152, 822 P.2d 1250 (1992) (counselor's testimony that child victim's story was "very clear" and remained consistent throughout sessions served merely to bolster victim's testimony).

[6]*Harper*, 35 Wn. App. at 858 (quoting 4 J. WEINSTEIN & M. BERGER, EVIDENCE § 801(d)(1)(B)[01], at 801-117 to -118 (1981).

[7]*Harper*, 35 Wn. App. at 858 (quoting WEINSTEIN, at 801–117 to –118).

[8]*Harper*, 35 Wn. App. 858–59.

admission under the cited exceptions to the hearsay rule. Brown's excited utterances and statements for the purposes of medical treatment were admissible as exceptions to the hearsay rule because they were reliable evidence tending to prove the truth of the matter asserted— that Smith raped Brown.[9] They were not offered to show that Brown consistently repeated her allegations on different occasions. Therefore, it was unnecessary to relate them to express or implied impeachment in order to justify the repetition.

 Smith also argues that because the statements repeated Brown's account of the rape, the trial court should have excluded them as needlessly cumulative. Under ER 403, the trial court may exclude relevant evidence if its probative value "is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The decision to limit trial testimony is within the broad discretion of the trial court.[10]

Presentation of evidence relating to a material issue is not needlessly cumulative or a waste of time simply because it comes in through several witnesses whose accounts are consistent. The statements that Brown made to the friend, the officer, and the doctor were not identical. This was not a case where the State attempted to call numerous witnesses of the same type to say the same thing. Instead, each witness had a perspective that helped the State, in different ways, to rebut Smith's assertion that the sex was consensual. In much the same way, different eyewitnesses might help a jury to assemble its view of a fight or a car accident. The record reflects that the court took steps to prevent the testimony from being needlessly cumulative.

We conclude the court acted within its discretion in

[9]*See State v. Bedker*, 74 Wn. App. 87, 93, 871 P.2d 673, *review denied*, 125 Wn.2d 1004 (1994).

[10]*State v. Weiss*, 73 Wn.2d 372, 378, 438 P.2d 610 (1968).

admitting the statements Brown made to different people on the night in question.

## III.

Smith contends the prosecutor committed misconduct by commenting on his right to be present at trial. During Smith's direct examination, Smith and his attorney occasionally referred to photographs of Brown's apartment that the State had introduced into evidence. On cross-examination, the prosecutor suggested that Smith had constructed his account of the evening to fit the photographs of the crime scene:

Q: You looked at State's Exhibit Number 6, that showed a wine bottle on a counter, didn't you?

A: Yes, I did. . . .

Q: So before you decided to testify that Ms. Brown had two or three glasses of wine out of that bottle, you had a chance to see that that bottle wasn't all the way full, didn't you?

The court overruled Smith's objection to this question. The prosecutor continued:

Q: Isn't it fair to say that after you looked at all the photographs in the case and you had a chance to read the discovery and see what people were going to say and hear what they had to testify to, it was only then that you crafted your story about what happened, how it would fit with the pictures and the evidence that you heard?

When Smith's second objection was overruled, he responded:

A: [Defense counsel] and I went over the evidence. He told me to tell the truth and that's what I did. I didn't craft anything.

Smith contends these questions infringed upon the exercise of his constitutional rights to confront his accusers and view the evidence against him. In *State v.*

*Johnson*,[11] the prosecutor argued in closing that the defendant had the opportunity to "tailor his testimony to what came before" because he was "the only one witness that could watch the entire proceeding take place[.]"[12] This court held that the prosecutor's comments about the defendant's "unique opportunity to be present at trial and hear all the testimony against him" impermissibly infringed on his exercise of his Sixth Amendment rights.[13]

Under *Johnson*, the State may not argue that a defendant, by sitting in the courtroom throughout the trial, has gained the *unique opportunity* to tailor his testimony. But the holding in *Johnson* does not prevent the State from arguing that a defendant has tailored his testimony to the State's proof. The constitutional right is to be present at trial and confront witnesses. It is not a right to be insulated from suspicion of manufacturing an exculpatory story consistent with the available facts.

The State's questions in this case raised an inference from Smith's testimony; they were not "focused on the exercise of the constitutional right itself."[14] The State could have asked the same questions of any witness aware of the State's evidence. We hold the questions did not constitute misconduct.

## IV.

Smith also contends the prosecutor committed misconduct by commenting on his exercise of the marital privilege.

Brown called 911 at 7:19 p.m. Smith testified on direct examination that he called his wife from the bar on the day of the alleged rape and that she wanted him home by 5 p.m. He said he arrived home at about 5:30 or 5:45. Dur-

---

[11]*State v. Johnson*, 80 Wn. App. 337, 908 P.2d 900 (1996).

[12]*Johnson*, 80 Wn. App. at 340–41.

[13]*Johnson*, 80 Wn. App. at 341.

[14]*Johnson*, 80 Wn. App. at 341.

ing cross examination, the State elicited Smith's testimony that his wife was home when he got there. Over objection, the prosecutor asked, "Your wife is not testifying in this case that you came home at 6:00 o'clock, is she?" Smith agreed that she was not. The State argued in closing, also over objection, that Mrs. Brown was the one witness who could have corroborated the defendant's testimony but she "didn't even testify for him."

■ ■ As a rule, the State may comment on a criminal defendant's failure to call a witness if the defendant's testimony "unequivocally implies the uncalled witness's ability to corroborate his theory of the case."[15] An exception to this rule applies in the case of an assertion of testimonial privilege. "If . . . some privilege applies so that the witness's testimony is protected, then the [adverse] inference is not proper."[16]

RCW 5.60.060(1) provides in part:

> A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband . . .

In order to give force to this statute, Washington courts have long held that the State may not draw an inference of guilt from the assertion of the marital privilege.

> [T]here inheres in this statute the *mandatory* provision that no inference of guilt shall arise from the failure of a wife to testify for or against her husband, or for a husband to testify for or against the wife. It follows that the full protective force of the statute is not secured if the silence of the wife be construed against the husband in a criminal action . . . .[17]

In *State v. Charlton*, the defendant's wife was a witness

---

[15]*State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990).

[16]*State v. Blair*, 117 Wn.2d 479, 489, 816 P.2d 718 (1991).

[17]*State v. Charlton*, 90 Wn.2d 657, 663, 585 P.2d 142 (1978) (quoting *State v. Swan*, 25 Wn.2d 319, 327, 171 P.2d 222 (1946)); *see also State v. Torres*, 16 Wn. App. 254, 260, 554 P.2d 1069 (1976).

to events leading up to his arrest. In rebuttal argument, the prosecutor commented on Charlton's failure to call his wife to corroborate his account of the evening: " 'Who was there that was another witness to the arrest, the defendant could have called? Where is Mrs. Charlton?' "[18] The Court concluded the prosecutor's comments flagrantly violated the "elementary" rule against drawing an inference of guilt from the failure of a wife to testify for her husband.[19]

█ The State contends the rule of *Charlton* does not apply in a situation where the defendant's testimony implies that his spouse could corroborate his version of events. The argument is not without force. It is in harmony with the reasoning of *State v. Contreras*,[20] that the shield of privilege should not become a sword against reasonable prosecutorial argument. "Rules of evidence are designed to aid in establishing the truth."[21] Ordinarily, a party who opens the door to a subject may be cross–examined within the scope of the opening.[22] But Washington authorities squarely prohibit extending this rationale into territory historically occupied by the marital privilege. In *State v. Swan*,[23] the defendant's wife was a witness to an altercation that led to the victim's death. The Court held it was misconduct to comment on the defendant's failure to waive the marital privilege. In *State v. Gant*,[24] the defendant testified that narcotics in his possession were prescription drugs belonging to his wife. Again, the comment on the defendant's failure to call his wife was misconduct. These cases are indistinguishable from the case at hand. The

---

[18]*Charlton*, 90 Wn.2d at 660.

[19]*Charlton*, 90 Wn.2d at 661–63.

[20]*Contreras*, 57 Wn App at 471.

[21]*State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

[22]*Gefeller*, 76 Wn.2d at 455; *see also State v. Rochelle*, 11 Wn. App. 887, 893, 527 P.2d 87 (1974), *review denied*, 85 Wn.2d 1001 (1975).

[23]*Swan*, 25 Wn.2d 319.

[24]*State v. Gant*, 6 Wn. App. 263, 492 P.2d 571 (1971).

fact that Smith's testimony suggested his wife could potentially have corroborated his version of events did not justify comment on her failure to testify.

We conclude the prosecutor committed misconduct by commenting on Smith's exercise of the marital privilege.

■ While comment on the exercise of the marital privilege is generally deemed prejudicial,[25] it does not compel reversal in all cases. Prosecutorial misconduct requires reversal if there is a "substantial likelihood" the misconduct affected the verdict.[26] The Court reversed on this basis in *Charlton*. The evidence against the defendant was not overwhelming, and the Court concluded that it was "entirely reasonable to believe that some jurors may have been inclined to believe petitioner's version of the incident, rather than the [State's]".[27]

The particular facts of this case are not analogous. Smith's version was that he and Brown engaged in vaginal intercourse that was "totally consensual." The State's witnesses described Brown as being in a state of near–hysteria when she reported the rape. Bruises and scratches on her back, chest and forearms corroborated her account of a violent physical assault. The severe injuries to her anus and perineum, and the blood and fecal stains on her bed, all corroborated her account of anal penetration. Smith fled the State upon learning that police were looking for him. When captured, he spontaneously admitted that he was aware he had a "sexual problem with women." In context, the argument about Smith's failure to call his wife as an alibi witness was a relatively insignificant part of the State's case. There is no reason to believe the improper argument played a substantial part in the jury's decision to convict. We conclude the prosecutorial misconduct does not require reversal.

[25]*See Swan*, 25 Wn.2d at 327; *Gant*, 6 Wn. App. at 266.

[26]*Charlton*, 90 Wn.2d at 664; *State v. Rice*, 110 Wn.2d 577, 602, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910 (1989).

[27]*Charlton*, 90 Wn.2d at 664.

Affirmed.

KENNEDY, A.C.J., and ELLINGTON, J., concur.

Reconsideration denied July 18, 1996.

Review denied at 130 Wn.2d 1023 (1997).