STATE of Missouri, Plaintiff–
Respondent,

v.

Ronnie L. WALKER, Defendant–
Appellant.

No. 21266.

Missouri Court of Appeals,
Southern District,
Division One.

June 30, 1998.

Motion for Rehearing or Transfer Overruled
July 14, 1998.

Application for Transfer Denied
Aug. 25, 1998.

**624**

Emmett D. Queener, Asst. Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Presiding Judge.

A jury convicted Ronnie Walker ("Defendant") of two counts of first degree statutory sodomy, § 566.062,[1] and he was sentenced to concurrent prison terms of ten years. He contends that the trial court erred in permitting the State to cross-examine him about his presence in the courtroom during the testimony of other witnesses, and in overruling his objections to the testimony of witnesses recounting statements of the victim. We affirm.

Defendant does not challenge the sufficiency of the evidence to support the verdicts. Therefore, we recount only the evidence necessary to address the claims of error, viewing it in the light most favorable to the verdicts. *State v. Kitchen,* 950 S.W.2d 284, 285 (Mo. App. S.D.1997). Viewed in that manner, the evidence demonstrated that Defendant lived with T.W. ("Mother") and her two daughters, six-year-old E.W. and ten-year-old T.W. (the "victim"). In August 1995, the victim told Mother that Defendant had been "messing" with her by putting his hands between her legs. Mother then took the victim to the Sikeston, Missouri police station, and later to the hospital for an examination. At trial, the victim testified that on one occasion, Defendant said that he was "intimately in love" with her and put his finger "where babies come from, and started moving it around." She also said that he pinched her breasts, licked her "private parts," and told her to touch his penis through his pants. The victim also testified that the next night, Defendant did the same things to her and also made her give him a "French kiss." In all, she testified that similar events happened on six occasions.

■ Defendant presents two points on appeal. In his first point, he contends that the trial court erred in permitting the prosecutor "to cross-examine [him] regarding his presence in the courtroom during the testimony of other witnesses which allowed him to conform his testimony to the testimony of other witnesses." He argues that this invited the inference that by exercising his constitutional rights to confront witnesses against him and to testify in his own behalf, he was being untruthful. Consequently, he contends that it had a chilling effect on his exercise of his constitutional rights, and it forced him to make an election between those rights.

■ Defendant admits that this contention was not preserved for appellate review because his trial counsel did not object to the cross-examination on this basis. Defendant also failed to raise the issue in his motion for new trial. To preserve a constitutional question for review, the litigant must raise the matter at the first opportunity, specifically assert the sections of the constitution alleged to have been violated, and preserve the matter in the motion for new trial. *State v. Pullen,* 843 S.W.2d 360, 364 (Mo. banc 1992), *cert. denied,* 510 U.S. 871, 114 S.Ct. 200, 126 L.Ed.2d 158 (1993). Here, Defendant met none of these requirements.

■ Defendant requests that we review this contention for plain error. When seeking plain error review, a defendant must demonstrate that the trial court's action was not only erroneous, but that the error so substantially affected his rights that manifest

---

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo.banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). Relief under this standard requires that a defendant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *Id.*

The cross-examination to which Defendant objects is set forth below:

Q: Mr. Walker, you've been in this courtroom the whole proceeding; right?

A: Yes.

Q: You've heard ev—all the testimony in the case.

A: Yes, sir.

Q: You've had an opportunity to look over all the State's exhibits and statements of all the witnesses, haven't you?

A: Yes.

Q: In order to be able to form what your testimony would be right now.

A: Yes.

Q: Right. These other ones didn't have that opportunity, did they?

. . . .

Q: You have been able to listen to everybody's testimony; right?

A: Have I been here and listened to it?

Q: Yes.

A: Yes.

Q: All right. And you could form whatever you would like to say today, based upon what the evidence that was presented by your defense or in the cross-examination of the witness.

. . . .

A: So, could you repeat that question again?

Q: Let me back up. You have heard everything in the courtroom here today.

A: Yes.

Q: You've heard all the witnesses in here today.

A: Yes.

Q: You've had an opportunity to, if necessary, to adjust your testimony to what the evidence is in this trial?

A: Yes.

Q: Correct. No one else has that opportunity to do that.

A: Well—

Q: Yes or no, sir?

A: Well, I guess everybody has got the opportunity to do that.

Q: Well, you know there's exclusion of witnesses and they're not in the courtroom.

A: Well, when—

. . . .

Q: You've heard all the testimony of the witnesses today.

A: Right.

Q: Right.

Defendant's argument may be summarized by the following quote from his brief:

[Defendant] had a constitutional right to be present at trial and confront witnesses against him. "One of the most basic rights of the confrontation clause is the accused's right to be present in the courtroom at every stage of his trial." [Defendant] also had constitutional right [sic] to testify in his own defense. The State trampled on [Defendant's] rights with its questions, and [Defendant] is entitled to a new, and fair, trial.

One of the cases emphasized by Defendant in support of his argument is *Agard v. Portuondo,* 117 F.3d 696 (2nd Cir.1997). In *Agard,* the prosecutor said, in closing argument:

You know, ladies and gentlemen, unlike all the other witnesses . . . the defendant has a benefit and the benefit that he has, unlike all the other witnesses, is he gets to sit here and listen to the testimony of all the other witnesses before he testifies. . . . That gives you a big advantage, doesn't it. You get to sit here and think what am I going to say and how am I going to say it? How am I going to fit it into the evidence. . . . He's a smart man. I never said he was stupid. . . . He used everything to his advantage.

*Id.* at 707. The court held that this argument violated the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him; his rights under the Fifth, Sixth and

Fourteenth Amendments to testify in his own defense, but not be compelled to do so; and his right under the Fourteenth Amendment to due process of law. *Id.* at 709–714. In so holding, however, the court acknowledged a distinction between cases where the subject is brought up in closing argument versus those where it is the subject of cross-examination:

> Although many of the state cases rely upon and make reference to summation cases and cross-examination cases as though they were analytically interchangeable, we believe that they should be addressed separately because summation remarks raise constitutional issues which either are not present or are of less concern when made upon cross-examination. We today express no opinion as to the propriety or constitutionality of similar remarks made during cross-examination.

*Id.* at 708. In so restricting its opinion, the court continued:

> On cross-examination, a prosecutor may legitimately question any witness about his opportunity and motivation to fabricate testimony. Such questioning goes to the witness' credibility, and the witness is afforded an opportunity to respond and repair the attack. Summation remarks, however, occur too late for the witness to rehabilitate his credibility and may, as in this case, occur too late for even his attorney to respond to the attack.

*Id.* at 708 n. 6. Here, Defendant primarily relies on cases involving comments during closing argument such as *Agard.*

Defendant does cite *State v. Smith,* 82 Wash.App. 327, 917 P.2d 1108 (1996), in which the prosecutor cross-examined the defendant concerning whether he had tailored his testimony to fit the evidence he had seen and heard presented earlier in the case. Apparently contrary to the distinction referred to in *Agard,* the *Smith* court referred to *State v. Johnson,* 80 Wash.App. 337, 908 P.2d 900 (1996) (a closing argument case), which held that the state may not argue that a defendant, by sitting through the trial, had gained a unique *opportunity* to tailor testimony. *Smith,* 917 P.2d at 1112. It held,

however, that the prosecutor was not prevented from contending that the defendant had actually tailored his testimony to meet the state's evidence. *Id.*

*Sherrod v. United States,* 478 A.2d 644 (D.C.1984), cited by Defendant, is closer factually to the instant case. There, the prosecutor indicated, in his questioning of defendant, that he had heard everyone else testify before taking the stand. The court said that inviting the jury to draw impermissible inferences from a defendant's exercise of his constitutional right to confront the witnesses against him is objectionable whether it is in closing argument or cross-examination. *Id.* at 654. In *Sherrod,* as in the instant case, however, the defendant had not objected to the questioning. Significantly, the court found no plain error. *Id.*

In *State v. Grilli,* 369 N.W.2d 35 (Minn.Ct. App.1985), the defendant contended that his Sixth Amendment rights were violated when the prosecutor cross-examined him about whether he had heard the testimony of all of the other witnesses. The court held, however, that, having failed to object to the questions, the defendant waived his right to a review of that issue. *Id.* at 37.

■ In *Davis v. State,* 221 Ga.App. 131, 470 S.E.2d 520 (1996), the prosecutor began her cross-examination of the defendant by repeatedly asking him about the fact that he had been present throughout the trial and was the only witness who had heard all of the other witnesses testify. There, the trial court overruled defendant's objections to the cross-examination. The appellate court held that the questions were designed to reflect upon the defendant's credibility and allow the jury to infer that his testimony was "tailored." *Id.* 470 S.E.2d at 523. It found no error, saying, "When a defendant chooses to testify, he must be prepared to withstand cross-examination as to his credibility." *Id.* Likewise, in *State v. Martin,* 101 N.M. 595, 686 P.2d 937 (1984), the defendant objected to the prosecutor's questions about whether she had heard all of the State's evidence before testifying. The appellate court held that overruling the objections was not error, saying, "When a defendant waives her right

to remain silent and takes the stand in her own defense, she subjects herself to cross-examination on the credibility of her testimony." *Id.* 686 P.2d at 941.

In the instant case, it is significant that Defendant answered affirmatively when asked by his own attorney on direct examination whether he had "heard the testimony up to this point in the trial." The area of interrogation he complains of was, therefore, first established by Defendant himself. Where a defendant refers to a subject, even in a general way, he subjects himself to cross-examined about that subject. *State v. Foulk,* 725 S.W.2d 56, 70 (Mo.App. E.D.1987). *See also State v. Rapheld,* 587 S.W.2d 881, 891 (Mo. App. E.D.1979); *State v. Rice,* 522 S.W.2d 335, 338 (Mo.App.St.L.D.1975).

■ Defendant asserts that the trial court plainly erred in "permitting the state to cross-examine" him about his presence in the courtroom during the testimony of other witnesses. He does not specify what action he contends that the trial court should have taken. *Sua sponte* action by the trial judge should be exercised only in exceptional circumstances. *State v. Clements,* 849 S.W.2d 640, 644 (Mo.App. S.D.1993).

Under all of the circumstances here, we do not find plain error warranting relief. This point is denied.

■ In his second and final point, Defendant contends that the trial court erred in overruling his objections to the testimony of Mother, the investigating police officer, and an investigator for the Missouri Division of Family Services. His theory is that these witnesses recounted what the victim told them in making the accusations forming the basis for these charges. He argues that the testimony of these witnesses was cumulative and amounted to improper bolstering of the victim's testimony.

Section 491.075 provides, in pertinent part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child testifies at the proceedings . . .

In this case, the trial court conducted a hearing prior to trial and determined that the testimony would be admitted pursuant to the statute. At trial, Mother described what the victim told the officer; the officer identified a typewritten statement he took from the victim; and the Division of Family Services Investigator testified about what the victim told her.

Defendant cites *State v. Seever,* 733 S.W.2d 438 (Mo.banc 1987), but acknowledges that it is distinguishable from this case because it involved the introduction of a videotaped interview of the child victim, in addition to her live testimony. The court held that under those circumstances, there had been improper enhancement and rehabilitation. *Id.* at 441. Defendant also acknowledges that Missouri Courts have distinguished *Seever* on a number of occasions, resulting in the rejection of his present contention.

In *State v. Wright,* 751 S.W.2d 48 (Mo.banc 1988), the Missouri Supreme Court held that out-of-court statements by a child victim to a detective were admissible pursuant to § 491.075, even though the child also testified. It noted that "out-of-court statements such as those in question are a species of evidence distinct from the declarant's testimony at trial possessing unique strengths and weaknesses." *Id.* at 53. This approach was affirmed in *State v. Silvey,* 894 S.W.2d 662, 672 (Mo.banc 1995), in which the court said that statements by a child victim, "which were informal and not planned as a substitute for [her] testimony, did not improperly bolster [her] testimony because the statements, even taken together, did not repeat [her] testimony to the extent that it had the effect of allowing [her] to testify twice." *See*

also *State v. Gollaher,* 905 S.W.2d 542, 546 (Mo.App. E.D.1995).

In this case, Defendant argues that the evidence presented from the three witnesses in question was merely a reiteration of the same testimony given by the victim. In accordance with *Wright,* our review does not indicate that such evidence had the effect of permitting the victim to testify twice, and was not totally duplicative of her live testimony. No error appearing, this point is denied.

The judgment is affirmed.

CROW and BARNEY, JJ., concur.