**STATE of Missouri, Respondent,**

v.

**Jeffrey L. FRANCIS, Appellant.**

**No. WD 55218.**

Missouri Court of Appeals,
Western District.

June 22, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Irene Karns, Public Defender Office, Columbia, for Appellant.

Kevin Hennessey, Attorney General Office, Jefferson City, for Respondent.

HANNA, Judge.

The defendant was convicted of three counts of assault, § 565.050, RSMo 1994, and three counts of armed criminal action, § 571.015, RSMo 1994, in the Jackson County Circuit Court. With regard to the assault charges, the defendant was sentenced to consecutive terms of imprisonment of 20 years, 10 years, and 7 years respectively. With regard to the armed criminal action charges, the defendant was sentenced to five years imprisonment on each charge to run concurrent with the defendant's other sentences. On appeal, the defendant complains that his constitutional right to due process was violated as a result of the state's conduct at trial. Specifically, the defendant contends that the trial court erred in permitting the prosecutor to cross-examine him about his presence in the courtroom during the testimony of other witnesses, and in refusing to permit defense counsel to cross-examine the victim about his alleged arrest in a collateral matter.

The defendant does not challenge the sufficiency of the evidence to support the verdicts. Therefore, we recount only the evidence necessary to address the claims of error, viewing it in the light most favorable to the verdict. *State v. Kitchen*, 950 S.W.2d 284, 285 (Mo.App.1997). On April 15, 1996, Gregory Watson was driving towards his home when he received several electronic pages displaying Reginald Gant's telephone number. Stanley Johnson and Jonathon Barnes were riding with Watson. Watson returned the page and spoke with a man who identified himself as John Francis. Soon thereafter, a white car drove up behind Watson. Watson

pulled his car over to the side of the road, got out, and started walking towards the white car. Three people got out of the white car and started shooting at him. Watson was shot, and then he blacked out. Johnson and Barnes stayed in the car, but Barnes was able to grab Watson's gun and return the shots. Both Johnson and Barnes were injured during the shooting incident.

After being taken to the hospital, Watson spoke with the police. He identified one of the shooters as Reginald Gant, but he could not positively identify the other two men. About a month after the shooting, Watson picked Reginald Gant and John Francis out of photo spreads as the men who had shot him. Watson was treated for three gunshot wounds, one of which destroyed certain nerve pathways in his brain. The defendant was also treated for a gunshot wound.

At trial, the defendant testified in his own defense. The defendant said that he was a passenger in the white car. He explained that he intended to buy drugs from Watson that night. The defendant also testified that he carried a shotgun to the deal, and that he fired it only in self-defense. At the close of evidence, the jury found the defendant guilty as charged.

 In his first point on appeal, the defendant contends that the prosecutor's cross-examination questions regarding his presence in the courtroom during the testimony of other witnesses, created an inference that he adjusted his testimony in accordance with the testimony already presented. The cross-examination to which the defendant objects is as follows:

Q. Mr. Francis, now you've had the opportunity to hear your brother's version of this shooting and now we've had an opportunity to hear yours, right?

A. Yes.

Q. You could have testified before him, isn't that true? [1]

\* \* \*

Q. You heard your brother testify here today, is that correct?

A. Yes.

Q. Okay. So, you know what his story is now, right?

A. Yes, sir.

Q. And, you really did know what his story was going to be before you came to court today, didn't you?

A. No, sir.

Q. You never talked to your brother about this?

A. No, not in detail, just talked about when I had … just kept him updated on my court dates and stuff.

Q. Sir, you are facing a sentence of life imprisonment if you're convicted and you're telling me you never even talked to your brother about what happened that night in detail.

A. No, sir.

According to the defendant, these comments were intended solely to draw the attention of the jury to the defendant's opportunity to tailor his testimony to his brother's testimony. The defendant maintains that this type of questioning violates his right to due process because it has the effect of forcing a criminal defendant to choose between his right to be present at trial and his right to testify on his own behalf. The defendant refers us to *State v. Irvin,* for the proposition that "[o]ne of the most basic rights of the confrontation clause is the accused's right to be present in the courtroom at every stage of his trial." 628 S.W.2d 957, 958 (Mo.App.1982)(citing *Lewis v. United*

---

1. At this point in the questioning, defense counsel objected, arguing that the prosecutor was inferring that the defendant could have remained outside during his brother's testimony. Specifically, defense counsel stated,

"I think they are commenting on his right to be present throughout his trial through all the testimony." The court overruled his objection.

*States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)).

■■■ Defendant admits that trial counsel did not object to the prosecutor's cross-examination of the defendant on the grounds that this questioning created an inference that the defendant adjusted his testimony in accordance with his brother's testimony. Despite the fact that defendant failed to preserve this complaint for appellate review, we may exercise our discretion to review this point for plain error pursuant to Rule 30.20. *State v. Parkus,* 753 S.W.2d 881, 887 (Mo. banc 1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). Plain error encompasses only prejudicial error that so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *Id.* at 888. For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice. *Id. See also State v. Cooksey,* 805 S.W.2d 709, 710 (Mo.App.1991). The defendant bears the burden of establishing manifest injustice. *Id.*

The defendant relies upon the Second Circuit case of *Agard v. Portuondo,* for the proposition that it is constitutional error for a prosecutor to insinuate, during closing argument, that a defendant's presence in the courtroom provided him with a unique opportunity to tailor his testimony to match the evidence. 117 F.3d 696, 709 (2nd Cir.1997). In *Agard,* the court found that a jury may infer from such comments that a defendant is guilty and, therefore, penalize him for exercising his constitutional right to attend his own trial. *Id.* at 710.

*Agard* is not controlling, nor under these facts, persuasive. The court, in *Agard,* expressly stated that its holding was limited to a prosecutor's comments during closing argument, and was not applicable to a situation involving cross-examination. *Id.* at 708–09. The court reasoned that the nature of closing argument raises constitutional issues that may not be present in cross-examination. *Id.*

Alternatively, we find the Southern District case of *State v. Walker,* to be both persuasive and factually on point. 972 S.W.2d 623 (Mo.App.1998). In *Walker,* the court held that questioning a defendant regarding his opportunity to hear the testimony of other witnesses, and to conform his testimony to that of the other witnesses was not plain error. *Id.* at 627. Apparently, Walker's attorney asked him on direct examination whether he had heard the testimony up to that point in the trial. *Id.* Walker responded in the affirmative. *Id.* In light of these circumstances, the court determined that Walker had opened himself up to cross-examination regarding his opportunity to hear the testimony of prior witnesses. *Id.* The court emphasized that, where a defendant refers to a subject on direct examination, he opens himself up to cross-examination about that subject. *Id.* (citing *State v. Foulk,* 725 S.W.2d 56, 70 (Mo.App.1987)).

In the present case, the defendant testified as follows on direct examination:

Q. The last witness that testified, Mr. John Francis . . .

A. Yes.

Q. He testified that he is your brother . . .

A. Yes.

Q. And, you agree with that?

A. Yes, sir.

Defense counsel continued to ask the defendant about testimony he had heard prior to his own testimony:

Q. Now you heard the police testify when they arrived at the scene, there was no gun with Gregory Watson. Do you remember hearing that testimony?

A. Yes.

* * *

Q. All right. Well, you saw Detective Volker testify, and she's a policeman on the Missouri side.

A. Yes.

Q. And you saw her testify?

A. Yes.

* * *

Q. Did you hear that testimony from an expert who said that there were five shells there?

A. Yes.

Q. They believe from the same shotgun. You were here ... do you remember hearing that testimony?

■ It is well established that a defendant who chooses to take the stand and testify on his own behalf is subject to contradiction and impeachment, the same as any other witness. *State v. Selvy*, 921 S.W.2d 114, 116 (Mo.App.1996). An attorney may ask a witness any question to test the witness' recollection, accuracy, veracity, or credibility. *State v. Jackson*, 768 S.W.2d 614, 616 (Mo.App.1989).

Under our deferential standard of review, we cannot say that the trial court erred in allowing the prosecutor's questions on cross-examination about defendant's opportunity to hear his brother testify prior to his taking the stand in his own defense. Here, the prosecutor was merely pointing out the obvious fact that the defendant had observed the testimony of prior witnesses. Moreover, the defendant opened the door for the prosecutor to examine him with regard to his presence in the courtroom, and his opportunity to hear his brother's testimony. By admitting on *direct examination* that he heard his brother, the police, Detective Volker, and an expert testify, the defendant himself established that prior testimony at the trial was a proper subject of inquiry. Additionally, the prosecutor did not argue that the defendant adjusted his testimony to conform with his brothers' testimony. The

prosecutor merely commented on the fact that the defendant heard his brother testify. Finally, unlike the prosecutor in *Agard*, the prosecutor in the present case did not refer to the defendant's presence during the state's closing argument. As such, no error resulted from the prosecutor inquiring into defendant's credibility during cross-examination in this case. Point denied.

■ In his second point on appeal, defendant complains that the trial court erred in not allowing defense counsel to cross-examine the victim, Gregory Watson, about an alleged police search of Watson's residence and Watson's subsequent arrest. The defendant argues that the inquiry was relevant because any benefit to Watson, such as a favorable plea offer, would be probative of the victim's credibility and motive to testify. In support of this argument, the defendant refers us to *State v. Schaal*, for the proposition that cross-examination is the "greatest legal engine ever invented for the discovery of truth." 806 S.W.2d 659, 663 (Mo. banc 1991) (quoting 5 Wigmore Sec. 1367). *But see State v. Garmon*, 780 S.W.2d 721, 722 (Mo.App. 1989). In *Garmon*, the court held that the scope and extent of questioning permitted during cross-examination on collateral matters for purposes of impeachment is left to the trial court's discretion. *Id.*

■ It is well established that showing "a mere arrest, investigation, or criminal charge that has not resulted in a conviction" may not impeach witness credibility. *State v. Wise*, 879 S.W.2d 494, 510 (Mo. banc 1994)(quoting *State v. Sanders*, 360 S.W.2d 722, 725 (Mo.1962)). There are three exceptions to this general rule: (1) where the inquiry demonstrates a specific interest of the witness; (2) where the inquiry demonstrates a witness' motivation to testify favorably for the state; or (3) whether the inquiry demonstrates that the witness testified with an expectation of leniency. *Wise*, 879 S.W.2d at 510.

The defendant appears to be arguing that the trial court erred in prohibiting this information because this inquiry would demonstrate *the witness' motivation to testify favorably for the state* because he may have received a favorable plea agreement. These assertions are, however, unsupported by the record. Prior to Watson taking the stand on direct examination, defense counsel approached the bench and informed the court that he was told by his client that Watson was "in some kind of trouble over drug activity, that his house had been raided or kicked, as they call it." He then requested the court's permission to "ask the State's Attorney, on the record, if there's any type of an agreement, first of all, with Mr. Watson that he's receiving a benefit like charges not being filed or if they have information about this. Otherwise, I may be – I don't want to ask a question that has no foundation to it on cross-exam." In response, the prosecutor assured the court and defense counsel that they did not have any agreements with Watson nor did they have information that federal authorities had agreements with him. Based on this information, the court ruled that defense counsel was prohibited from questioning Watson regarding his alleged arrest. The court indicated that it would reconsider the issue if defense counsel was able to provide it with more substantial evidence. Defense counsel did not provide the court with any more information on this subject.

In *State v. Watts,* the court held that a defendant need not establish that the state made a deal or a promise in exchange for a witness' testimony, but defendant must demonstrate that the witness expects favorable treatment if he furthers the state's case. 813 S.W.2d 940, 943 (Mo.App.1991). *See also State v. Joiner,* 823 S.W.2d 50, 54 (Mo.App.1991).

Here, the defendant did not present any evidence establishing that there was a drug raid that resulted in Watson's arrest, much less that Watson was receiving favorable treatment from the state. In fact, the only evidence we have with regard to this issue is the prosecutor's testimony that the state had not entered any agreements with the defendants. As such, the record does not support a finding that any of the exceptions to the general rule that showing that he was arrested but not convicted may not attack the credibility of a witness is applicable. Defense counsel properly approached the bench, made the appropriate inquiry, and the trial court correctly ruled. Point denied.

Affirmed.

EDWIN H. SMITH, Presiding Judge, concurs.

SPINDEN, Judge, files separate opinion.

SPINDEN, Judge, concurring.

I concur with the majority's opinion, but I write separately to express a differing view concerning review of a claim of plain error under Rule 30.20. The majority says, "Plain error encompasses only prejudicial error that so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." Op. at 77. This is contrary to Rule 30.20's instruction.

Rule 30.20 says, "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The rule, in effect, means that, in cases involving an issue not briefed, we set out to search for manifest injustice or miscarriage of justice only when we are faced with an issue of plain error.

If plain error is error resulting in a manifest injustice, as the majority and numerous other cases have stated, *see State v. Parkus,* 753 S.W.2d 881, 888 (Mo. banc), *cert. denied,* 488 U.S. 900 (1988), Rule 30.20, in effect, provides that any error which results in manifest injustice may be reviewed if it results in manifest injustice. This obviously is not logical and is contrary to the plain wording of Rule 30.20 that a court should first look for plain error and, only when it finds it, should the

court determine whether manifest injustice resulted.

The rule specifically restricts its application to "plain errors." This means that, in the universe of errors, the rule applies only to those errors which are plain. The Supreme Court made this distinction in *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031 (1995), in which it defined a plain error claim as a claim which *"facially* establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]' "[1] The Supreme Court reaffirmed this definition in *State v. Chaney*, 967 S.W.2d 47, 59 (Mo. banc), *cert. denied*, —— U.S. ——, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998); *State v. Johnston*, 957 S.W.2d 734, 756 (Mo. banc 1997), *cert. denied*, —— U.S.——, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998); *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998); *State v. Clemons*, 946 S.W.2d 206, 224 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Simmons*, 944 S.W.2d 165, 177 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997).

This means that plain error review involves a two-step process. Only a claim which, on its face, causes a court to believe that it presents a substantial ground for manifest injustice is cognizable under Rule 30.20. In the absence of such claim, a court should "decline to exercise its discretion" to review it under Rule 30.20. *Brown*, 902 S.W.2d at 284.

Rule 30.20 necessarily requires that our search for plain error ends with a facial examination of the claim. If we find plain error from such an examination, then the rule authorizes, as a matter of our discretion, a second step: to determine whether the error resulted in manifest injustice. If a facial examination does not reveal plain error, our review should stop.

"Face" refers to "[t]he surface of anything . . . . The words of a written paper in their apparent or obvious meaning[.]"

BLACK's LAW DICTIONARY 590 (6th ed.1990). If an examination of a claim on its face does not reveal plain error, then the court should refrain from further review, including a determination of whether the purported error resulted in manifest injustice.

This means that not all prejudicial error—that is, reversible error—can be deemed plain error. Our review under Rule 30.20 is restricted to cases involving plain errors, or those which are "evident, obvious, and clear[.]" *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992).

The majority, in its determination of whether Francis suffered manifest injustice, granted full review and concluded "that the trial court [did not err] in allowing the prosecutor's questions on cross-examination about [Francis'] opportunity to hear his brother testify prior to his taking the stand in his own defense." Op. at ——. Instead, it should have ended its review with a rejection of the claim as not involving plain error. *See State v. Walker*, 972 S.W.2d 623 (Mo.App.1998).