STATE of Missouri, Respondent.

v.

Ceddrick FRANKLIN, Appellant.

No. ED 75070.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 7, 2000.

Motions for Rehearing and/or Transfer to Supreme Court Denied April 19, 2000.

Application for Transfer Denied
May 30, 2000.

---

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

Defendant, Ceddrick Franklin, appeals from the judgment and sentence after a jury found him guilty of murder in the first degree, assault in the first degree, two counts of robbery in the first degree, two counts of burglary in the first degree, two counts of forcible sodomy and four counts of armed criminal action. We affirm in part and vacate and remand in part.

In September 1997, Anthony Cooper and James Howard were at Ronnie Golden's residence. Howard told Cooper he wanted to rob Cornelius Payne. Howard also stated that Payne would have to be killed because Payne knew him. Defendant, Anthony Cooper, James Howard, Ronnie Golden and a fifth man went to rob Payne at his apartment located in a four family flat in St. Louis. Because there were several people around the flat, the men decided not to commit the robbery. On October 8, 1997, defendant went to Golden's house where Cooper and Howard were present. Defendant said "he needed some drugs in his system." Howard suggested that they "do the robbery" of Payne and that if they got a large amount of "dope" they would split it. Cooper then left and returned with Andre McIntosh. Defendant drove a stolen car to Howard's house to obtain "things" for the robbery. Cooper, Howard, Golden and McIntosh drove a different car to Howard's house. Defendant, Cooper, Howard, Golden and McIntosh prepared for the robbery by dressing in black, obtaining four pistols and wearing gloves and putting tape on their fingers to avoid leaving fingerprints. The five men went in the stolen car to the four family flat and kicked in the door of one of the apartments. Dewayne Dodd, Ramona Davis and three children and not Payne lived at this apartment. The men demanded drugs and money, and hit and kicked Dodd and Ramona Davis. Food stamps were stolen from this apartment. Cooper found some razor blades and cut Dodd. Dodd suffered a broken nose and his cuts required between 300 and 350 stitches. The assailants eventually realized they were in the wrong apartment. Cooper told Golden to stay in Dodd's apartment to make sure no one called the police. Defendant, Cooper, Howard and McIntosh then went to Payne's apartment and kicked in the door. Payne, Carla Davis and three children were in the apartment. The four men demanded money and drugs. Defendant, Cooper and Howard beat Payne with a pole. At one point, the mask Cooper was wearing "raised up" and Carla Davis saw his face. Cooper told her he knew where she lived and he would kill her if she said "something." Defendant found a pistol and gave it to Cooper. Cooper and Howard shot Payne, and additional shots were also fired. Payne was shot nine times and died from his wounds.[1] Drugs and other items were stolen from the apartment. Defendant, Cooper, Howard, Golden and McIntosh fled in the stolen car and divided up the stolen property.

Defendant was charged by information as a prior offender with murder in the first degree, assault in the first degree, two counts of robbery in the first degree, two counts of burglary in the first degree, two counts of forcible sodomy, four counts of armed criminal action and sexual misconduct in the first degree. The state entered a motion of nolle prosequi for the sexual misconduct count. Defendant, Cooper and Howard were tried together. The jury found defendant guilty of the twelve counts remaining at trial. The trial court

---

1. The evidence was sufficient to support the jury's verdict regarding the two sodomy counts and extensive recitation of the facts relating to these two counts is unnecessary.

sentenced defendant as a prior offender to consecutive terms of life without parole for the murder conviction, twenty-five years for the assault conviction, twenty-five and thirty years for the robbery convictions, fifteen years for each burglary conviction, thirty years for each sodomy conviction and two life sentences, fifty years and twenty-five years for the armed criminal action convictions. This appeal followed.

█ The transcript of the trial was requested. The court reporter stated in an affidavit that her court reporter's bag containing the last three tapes of the trial was stolen. The stolen tapes provided the state's rebuttal evidence, prior offender hearings, instruction conference and closing argument. This court ordered the respective attorneys to prepare a stipulation for the missing portions of the transcript. The attorneys stipulated to certain facts but were unable to agree to certain other facts. This court granted the state's motion to remand to the trial court to resolve the disputed portions of the record. The trial court issued a certification of the trial record and an addendum to the certification. Defendant filed a motion with this court objecting to the trial court's certification of the record and requesting the cause be remanded for a new trial. Defendant contended among other things that meaningful review of his claims was impossible and that the trial court's certification of the record was an inadequate remedy. Defendant also raised this issue in his brief.

█ An appealing party is entitled to a full and complete transcript for an appellate court's review. *State v. Middleton,* 995 S.W.2d 443, 466 (Mo. banc 1999); *State v. Anthony,* 837 S.W.2d 941, 945 (Mo.App. E.D.1992). However, a transcript that is inaccurate or incomplete does not automatically require reversal. *Id.* Defendant is entitled to a new trial only if he exercised due diligence to correct the deficiency in the record and was prejudiced by the incompleteness of the record. *Id.* Under the circumstances here, defendant exercised

due diligence to correct the record. With the exception of the missing transcript for defendant's prior offender hearing that is discussed in our analysis for defendant's ninth point, review of the record and defendant's arguments fails to reveal any prejudice resulting from the missing transcript. Defendant's request for a new trial is denied.

█ We next address defendant's argument in his second point on appeal. Defendant contends that the trial court erred in "fashioning a ruling" that deprived the defense of its right to effectively cross-examine Golden and McIntosh regarding pending criminal charges. Defendant also contends that the trial court erred in refusing to permit the defense to cross-examine Martiez Armstrong at all regarding pending criminal charges. Defendant further contends that the rulings denied him the opportunity to demonstrate to the jury a reason for these witnesses to testify favorably for the state.

█ The scope of cross-examination and determinations regarding witness credibility are matters largely within the discretion of the trial court. *State v. Taylor,* 944 S.W.2d 925, 935 (Mo. banc 1997). Generally, a witness' credibility may not be impeached by showing a mere arrest, investigation or criminal charge that has not resulted in a conviction. *State v. Wise,* 879 S.W.2d 494, 510 (Mo. banc 1994); *State v. Francis,* 997 S.W.2d 74, 78 (Mo.App. W.D. 1999). There are three exceptions to this general rule: (1) where the inquiry demonstrates a specific interest of the witness; (2) where the inquiry demonstrates the witness' motivation to testify favorably for the state; or (3) where the inquiry demonstrates that the witness testified with an expectation of leniency. *Id.; State v. Joiner,* 823 S.W.2d 50, 52–53 (Mo.App. 1991).

The state filed a motion in limine requesting the trial court to order defense counsel not to mention any pending criminal cases of the state's witnesses. The

trial court overruled the state's motion. Prior to Golden's testimony for the state; the trial court, the prosecutor and defendant's, Howard's and Cooper's counsel discussed pending criminal cases against Golden in which Cooper and Howard allegedly had some involvement. There was also discussion that if Golden were cross-examined regarding these pending cases then the prosecutor would be permitted "to go into more detail" as to the pending cases and this would constitute improper evidence of uncharged crimes. The trial court stated that defendant's counsel could cross-examine Golden as to his pending criminal cases, "but if you do then I think that opens the door" for the prosecutor. During cross-examination, defendant's counsel asked Golden whether he had a pending case. The trial court sustained an objection to this question made by Howard's and Cooper's counsel. The trial court then explained its ruling:

> THE COURT: All right. Let me get [defendant's counsel] here because he asked the question. Was your question, [defendant's counsel], going to have to relate to whether disposition of the pending case had anything to do or was part of the negotiation in exchange for his testimony?
>
> [DEFENDANT'S COUNSEL]: Yes, Your Honor.
>
> THE COURT: Was your question in any way going to relate to any of the defendants in the pending case?
>
> [DEFENDANT'S COUNSEL]: I was not going to ask them about the pending or anything else.
>
> THE COURT: So your question was going to be whether the disposition, whether any disposition of the pending case about any reference to the particular of the case charged, whether there was anybody else charged together went into the negotiation for his testimony?
>
> [DEFENDANT'S COUNSEL]: Right.
>
> . . .
>
> THE COURT: I think that if [defendant's counsel] asks him that question in

that fashion without getting into the specifics of it as he has just indicated through what the court considers an offer of proof I will allow the question to be artfully made and the answer given in that limited fashion.

> [PROSECUTOR]: Well, I understand, of course, ruling, and so on redirect I'm going to ask about that pending case. I think that that's only fair. He was instructed—he was instructed what the consequences were going to be and they were each and every one –
>
> THE COURT: Well, let's cross that bridge when we get to it if we get to it.
>
> [PROSECUTOR]: He's already gotten to it.
>
> . . .
>
> THE COURT: Not to anticipate any inquiry on redirect examination or to arrive at anticipatory rulings, but it was the court's understanding and we discussed this issue in chambers that the issue was whether we were going to get into the specifics of the case as in whether there were unindicted co-defendants or whether he was an unindicted co-defendant or the particulars of the case as to who the defendants were or the charges, which is different from the question that [defendant's counsel] has posed in relation to just saying was there any deal to dispose of any pending case in exchange other than this one in exchange for your testimony, which is what you intended to propose to ask, right?
>
> [DEFENDANT'S COUNSEL]: Yes.
>
> . . .
>
> [Cross-examination of Golden continued]:
>
> [DEFENDANT'S COUNSEL]: This other pending case, you got the same lawyer for that case that you did for the case we're here on today; is that right?
>
> [GOLDEN]: Yes.
>
> [DEFENDANT'S COUNSEL]: Is that right?

[GOLDEN]: Yes.

Although initially sustaining the objection, the court set forth the parameters for questioning Golden regarding his pending criminal case. The court indicated that defendant's counsel could question Golden as to whether disposition of his pending case was related to his testimony for the state. Accordingly, defendant was permitted to cross-examine Golden regarding whether he had a reason to testify favorably for the state. Defendant's counsel did not inquire further other than asking Golden if he had the same lawyer for his pending case and for his involvement in the present case. Furthermore, Golden was cross-examined regarding the "deal" he made for his testimony for his involvement in the crimes for the present case.[2]

In addition to contending that the trial court's ruling deprived him of effective cross-examination of Golden, defendant also contends that he was left in a "no win situation" of either not cross-examining Golden on his pending case or implicating Cooper and Howard and thereby creating guilt by association. *See State v. Shackelford,* 861 S.W.2d 733, 736–37 (Mo.App. E.D.1993). However, we find that the trial court's ruling permitted inquiry into any motive for Golden to testify favorably for the state without unduly permitting improper guilt by association evidence. In addition, as indicated by the court, its ruling was anticipatory regarding whether on redirect the prosecutor could get into "the details" of Golden's pending case. Under these circumstances, the trial court did not abuse its discretion.[3]

**2.** During cross-examination, Golden testified that he pleaded guilty to thirteen counts. He also testified that in exchange for his testimony the state agreed to amend the murder in the first degree count to murder in the second degree, he would receive "a deal of seventeen years" for the thirteen counts and he had not been sentenced.

**3.** Defendant also contends that the trial court erred in its ruling permitting Cooper and Howard to be implicated for uncharged

The following is taken from McIntosh's cross-examination:

[HOWARD'S COUNSEL]: Now, is it true that you also have pending a pending charge?

[PROSECUTOR]: Your Honor, I'm going to object and ask to approach the bench please.

. . .

[HOWARD'S COUNSEL]: Well, this is what I would ask: Do you have a pending unlawful use of a weapon [ ], a .22 caliber on 7/26/97 at I think it's 5715 Lotus? And then my next question is . . . Has the State of Missouri made any deals with you concerning that case?

[PROSECUTOR]: I totally object to that, Your Honor. It is irrelevant to this case, and the state has a motion in limine against pending cases that has absolutely no bearing on this.

. . .

[THE COURT]: I will allow you to ask the question as to whether there was any deal regarding any pending case of the disposition of any pending case in exchange for his testimony, any pending case other than this case. The first question though that you asked, I'm not going to let you ask that question.

[PROSECUTOR]: So what are you going to let him ask?

[THE COURT]: I'm going to let him ask if there is a deal regarding disposition of any other pending cases in exchange for his testimony. I will allow him to ask that question, but I will not allow you to go into any details of any pending cases.

crimes because "a defendant in a criminal case has a right to be tried only for the offense with which he is charged." However, the discussion prior to Golden's cross-examination does not reflect that, contrary to Cooper and Howard, defendant was either an unindicted co-conspirator or indicted for alleged involvement in the pending case against Golden. Regardless, the analysis for defendant's argument as to guilt by association evidence is applicable.

[DEFENDANT'S COUNSEL]: If I could save ourselves the troubles, and I would also join in this motion to get into this pending case which go to the dates of the charge, and I'm going to assume that your ruling is that I would also not be allowed to ask those questions?

[THE COURT]: Except for the matters I indicated.

. . .

[Cross-examination of McIntosh continued]

[HOWARD'S COUNSEL]: Mr. McIntosh, not including this case, is there any deal you struck for any pending case in exchange for your testimony here today?

[McIntosh]: No.

The analysis for Golden applies to defendant's challenge to McIntosh's cross-examination. The court ruled that McIntosh could be cross-examined regarding any "deal" he made for disposition of any pending cases in exchange for his testimony for the state. Howard's counsel did ask whether there was any deal for his testimony. Defendant's counsel did not question McIntosh regarding any pending cases. As with Golden, McIntosh was cross-examined regarding the state's sentencing recommendation for his guilty pleas in the present case.[4] The trial court did not abuse its discretion.

Martiez Armstrong testified during the state's rebuttal case and as previously discussed, the transcript for that portion of the trial is missing. In its addendum to the record certification, the trial court stated that the defense brought the existence of the pending charge to the prosecutor's attention. The court also stated:

On the issue of cross-examining witness Armstrong relative any pending misdemeanor charge, there was discussion of this matter and an objection on general relevancy grounds, in light of the fact that the prosecutor was advised of its existence by the defense and there was no good faith indicia of the existence of any deal or intent to make a deal in exchange for any rebuttal testimony.

The trial court's statements reflect and defendant does not argue on appeal that there was any deal by the state for Armstrong's rebuttal testimony. Defendant argues that the "jury could have found that Armstrong had perceptions of the prosecution's power over her pending charges" and this gave her a motive to lie. However, defendant's argument is speculative and therefore insufficient to show an abuse of discretion. *State v. Harris,* 825 S.W.2d 644, 649 (Mo.App.1992); *State v. Watts,* 813 S.W.2d 940, 943 (Mo.App.1991); *See Francis,* 997 S.W.2d at 78. Defendant's second point is denied.

We next address defendant's argument in his ninth point. Defendant contends that the trial court erred when it found him to be a prior offender and thereby removed assessment of punishment from the jury. Defendant did not raise the issue in his motion for new trial and therefore review is for plain error. *State v. Vann,* 7 S.W.3d 407, 410 (Mo.App. W.D. 1999). Although a criminal defendant does not have a constitutional right to have a jury assess punishment, the defendant's right to a jury's recommendation of sentence is granted by statute, and if the sentence recommended by a jury is within the range of punishment for that crime, it constitutes the maximum sentence a court can impose. Section 557.036.3 RSMo. Cum.Supp.1997; *State v. Hunter,* 840 S.W.2d 850, 863 (Mo. banc 1992)(holding that a defendant does not have a constitutional right for a jury to assess punishment).

In the information, the state charged defendant as a prior offender. The information provided that on October 16, 1994, defendant pleaded guilty to the felony of "Distribution/Sale C/S Cocaine Base (941– 253) in the Circuit Court of the City of St. Louis, State of Missouri." As discussed, defendant's prior offender hearing was on

---

**4.** McIntosh testified that his "deal" with the state provided that he would be sentenced to concurrent terms of ten years for certain counts to be served consecutively with concurrent terms of five years for the remaining counts.

one of the missing tapes. In the certification of the trial record, the court stated that prior to the jury's verdict a hearing was conducted as to defendant's prior offender status. The court further stated that based on evidence presented at the hearing it "entered its finding reflecting that [defendant] was a prior offender under the laws of the State of Missouri, in that he pleaded guilty, on October 16, 1994, to the felony of Distribution/Sale of a Controlled Substance Cocaine Base in the Circuit Court of the City of St. Louis as set forth in Cause Number 941–253 and signed an order reflecting said finding."

A prior offender is a person who has pleaded guilty to or been found guilty of one felony. Section 558.016 RSMo.1994. Under section 558.021.1 RSMo. Cum.Supp. 1997, the court shall find a defendant to be a prior offender if: (1) the indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a prior offender; (2) evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender; and (3) the court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender.

 Defendant argues that the "silent record fails to demonstrate that the prior conviction the state pleaded was indeed suffered by [defendant], and that he was represented by counsel at the alleged prior conviction." In the certification, the trial court did set forth the basis for finding defendant was a prior offender. However, absent a transcript, review of the trial court's finding is not possible. Furthermore, as noted by defendant, the trial court's certification fails to state whether defendant was represented by counsel when he entered his guilty plea or if he voluntarily waived this right. "Among the facts the state must prove is that defendant was represented by counsel at the

proceedings on the convictions or that defendant was advised of that right and voluntarily waived it." *State v. Russ*, 945 S.W.2d 633, 634 (Mo.App. E.D.1997).

Under the circumstances presented here, defendant's sentence must be vacated and the cause remanded. On remand, the state shall be permitted to present whatever evidence it has of defendant's status as a prior offender. *State v. Lowery*, 926 S.W.2d 712, 713 (Mo.App. E.D. 1996). If the state presents sufficient evidence to prove beyond a reasonable doubt defendant's prior offender status, then the trial court may resentence defendant. *Id.* If not, the court must grant a new trial. *Id.*

No jurisprudential purpose would be served by addressing defendant's remaining points and these points are denied. Rule 30.25(b).

The judgment on defendant's convictions is affirmed, and defendant's sentence is vacated and the cause is remanded.[5]

KENT E. KAROHL, J., and MARY K. HOFF, J., Concur.

---

5. The state's motion to strike the affidavit in the appendix of defendant's brief is granted.