UNITED STATES

v.

Renarda K. KIRT, Sergeant (E–5), U.S. Marine Corps.

NMCM 98 00621.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 7 May 1997.

Decided 31 Jan. 2000.

LT Frank M. Doherty, JAGC, USNR, Appellate Defense Counsel.

LCDR Joann W. Melesky, JAGC, USN, Appellate Government Counsel.

Before LEO, Senior Judge, ANDERSON and NAUGLE, Appellate Military Judges.

ANDERSON, Judge:

A military judge, sitting as a general court-martial, convicted the appellant, following mixed pleas, of rape, forcible oral sodomy, assault with a dangerous weapon, indecent assault, and aggravated sexual abuse in violation of Articles 120, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 928, and 934 (1994). The appellant was sentenced to confinement for 30 years, forfeiture of all pay and allowances, reduction to pay-grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

After carefully considering the record of trial, the appellant's seven assignments of error,[1] his request for a new trial, his mo-

1. I. A SENTENCE INCLUDING A DISHONORABLE DISCHARGE AND THIRTY YEARS CONFINEMENT IS INAPPROPRIATELY SEVERE.

tions for a *DuBay* [2] hearing, and the Government's responses, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ. In addition, we deny the appellant's petition for a new trial and his motions for a *DuBay* hearing. Although none of the assignments of error have merit, we address below those that warrant further discussion.

### Factual and Legal Sufficiency

The appellant contends that the evidence is legally and factually insufficient to sustain his convictions for the rape, forcible sodomy, assault with a dangerous weapon, indecent assault, and aggravated sexual abuse. We disagree.

[1–3] The test for legal sufficiency is whether a reasonable factfinder, viewing the evidence in the light most favorable to the prosecution, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). The term reasonable doubt does not mean that the evidence must be free from conflict. *United*

*States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

#### 1. Appellant's Testimony

At trial, the appellant testified and presented his version of the facts. Just after midnight, he knocked on the barracks room door of the victim, a female Navy petty officer, looking to see if a male friend of his was in the room. At the time, he was wearing dark clothes and gloves and carrying a loaded Glock handgun in his waistband. Although it was a fairly warm night, he wore the gloves as a fashion statement, "just basically GQ." Record at 211. Similarly, his possession of the gun was part of that fashion statement. Once the victim opened the door and he learned that his friend was not there, he entered the room, sat on a bed, and engaged in a conversation with the victim. At the time of this encounter, he and the victim were acquaintances, nothing more. Because he was uncomfortable with the gun in his waistband as he sat on the bed, he took the weapon out and laid it on the bed next to him. When asked by the victim what his intentions were with respect to the weapon, he replied, "I don't have any intention, I just have it." Record at 214. He also told her it was for his personal protection. On several occasions, the victim asked him to put the weapon outside, but he refused. Finally, the victim said, "Take it and put it outside and I'll have sex with you." He wrapped the

---

II. WHETHER SGT KIRT SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL DEFENSE COUNSEL: (A) DID NOT CONTACT ANY OF THE SENTENCING WITNESSES NAMED BY SGT KIRT; AND (B) DID NOT CALL WITNESSES THAT COULD HAVE OVERCOME THE PROSECUTION'S THEORY OF THE CASE AND DID NOT EXAMINE THE PHYSICAL EVIDENCE THAT COULD HAVE REBUTTED PROSECUTION WITNESSES' TESTIMONY.

III. TRIAL COUNSEL'S CROSS–EXAMINATION REGARDING APPELLANT'S PRESENCE AT TRIAL IMPROPERLY ATTACKED APPELLANT FOR EXERCISING HIS CONSTITUTIONAL RIGHTS.

IV. THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUPPORT A CONVICTION FOR RAPE WHERE THE COMPLAINANT COULD ONLY ACCOUNT FOR 20 MINUTES OF THE ALLEGED INCIDENT WHEN HER TESTIMONY MAKES IT CLEAR

THAT SHE AND APPELLANT WERE TOGETHER FOR AT LEAST 90 MINUTES.

V. WHETHER THE CASE SHOULD BE DISMISSED BASED UPON THE ONE–SIDED, BIASED, AND PREJUDICIAL INVESTIGATION PERFORMED BY THE GOVERNMENT, WHICH RESULTED IN THE DESTRUCTION AND/OR WITHHOLDING OF FAVORABLE EVIDENCE TO THE ACCUSED.

VI. WHETHER SGT KIRT'S STATEMENT TO NCIS SHOULD HAVE BEEN SUPPRESSED WHERE THE SPECIAL AGENT TAKING THE STATEMENT ALTERED AND EDITED SGT KIRT'S STATEMENT.

VII. WHETHER LCDR GALESKI COMMITTED PERJURY WHEN HE TESTIFIED. Assignments of error IV–VII were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

**2.** *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

weapon in his t-shirt, put it outside, and proceeded to have consensual oral sex and sexual intercourse with the victim. He then returned to his room, and he put the weapon, which belonged to a Marine living in an adjoining room, back in a suitcase under that Marine's bed. He also put his own gloves in the suitcase, and that "was just something that happened." Record at 246.

Later that morning, when initially confronted about the incident by an agent of the Naval Criminal Investigative Service (NCIS), the appellant admitted to having had consensual sexual intercourse with the victim, but denied performing any oral sex and possessing a gun. Later that day, he changed his story, and admitted to performing oral sex and possessing a gun, but he continued to assert that the sex with the victim was consensual.

The appellant pleaded guilty to performing consensual oral sex on the victim and unlawfully carrying a concealed weapon. He denied forcing the victim at gunpoint to have sexual intercourse with him.

## 2. Victim's Testimony

The victim's version of events differed markedly from the appellant's. She recalls being awakened by a knock on her door shortly after midnight. When she opened the door, the appellant asked her if a friend of hers was there. She told him no and tried to shut the door. The appellant pushed his way into her room, pulled a gun from his waistband, and stuck it into her stomach. He ordered her to the back of the room, told her to undress, and then directed her to sit on the bed. She complied. He removed his t-shirt, wrapped the gun in it, and placed it at the head of the bed. He then removed his clothes, performed oral sex on her, and had sexual intercourse with her. She cried throughout the ordeal. After the appellant ejaculated, he dressed and left the room. The victim immediately knocked on her suitemate's door and complained that she had just been raped by the appellant. After being taken to the hospital, the victim re-peated her story to the emergency room triage nurse.

## 3. Discussion

Having carefully reviewed all the evidence, we find the victim's version of events to be more credible than the appellant's. First, the victim promptly reported the incident and had no apparent motive to lie. Second, the appellant initially lied about his involvement in the incident. Third, the appellant's assertion that he was wearing gloves as a fashion statement on a warm night makes little sense. His later placing of these gloves in someone else's room and in someone else's suitcase as something that just "happened" makes even less sense. The more plausible view of the wearing and placement of the gloves is that the appellant was trying to cover-up his crime, however ineptly. Fourth, the appellant admitted that the victim was quite upset about his gun, that prior to the sexual intercourse, she told him that she did not want to die, and that in retrospect, the presence of the gun may have caused her to agree to have sex with him. Fifth, a friend of the appellant's testified that hours before the incident, the appellant told him that sometimes he wanted to "take it" from the victim. The friend believed "it" was sexual intercourse. Record at 82.

The appellant complains that the victim could only account for 20 minutes of an attack that took 90 minutes. We find any discrepancy in the victim's perception of the length of the incident to be of no real moment. As the Government counsel argued, "In hell, you don't watch your watch. That's where [the victim] was on that morning." Record at 266. Accordingly, we are convinced beyond a reasonable doubt that the evidence is both legally and factually sufficient.

### Cross-examination

The appellant next contends that during the cross-examination of him on the merits of the case, the prosecutor impermissibly commented on his Fifth Amendment right to remain silent[3] and his Sixth Amendment right to confront witnesses.[4] We disagree.

---

3. The Fifth Amendment provides in part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V.

4. The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ... to be informed of the nature

In cross-examining the appellant, the prosecutor asked the following question: "Do you admit here today that you are the only witness in this court who has heard the testimony of every other witness, correct?" Record at 242. No objection was made to the question, and the appellant answered it in the affirmative. No further questions or discussions about this matter were made during the course of the trial, and no comment was made about it during argument on the findings.

State courts are divided over whether a prosecutor may properly comment in final argument about how the accused's presence in the courtroom provides him with a unique opportunity to tailor his testimony to match the evidence, and the U.S. Supreme Court has granted a petition for writ of certiorari to resolve that issue this term. *See Agard v. Portuondo*, 117 F.3d 696, 707–09 (2d Cir. 1997), *reh'g denied, but rationale narrowed*, 159 F.3d 98 (2d Cir.1998), *and cert. granted*, —— U.S. ——, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999) (holding argument improper where prosecutor insinuated that defendant's credibility was less than that of prosecution witnesses solely because he attended the entire trial while they were present only during their own testimony).[5] With respect to the constitutionality of similar remarks made during cross-examination, however, state courts have generally found them proper.[6] *See People v. Cobo*, 245 A.D.2d 72, 666 N.Y.S.2d 123 (N.Y.App.Div.1997); *Davis v. State*, 221 Ga.App. 131, 470 S.E.2d 520, 522–23 (1996); *State v. Smith*, 82 Wash.App. 327, 917 P.2d 1108, 1111–12 (1996); *State v. Grilli*, 369 N.W.2d 35, 37 (Minn.Ct.App. 1985); *State v. Martin*, 101 N.M. 595, 686 P.2d 937, 941 (1984). Only one court to our knowledge has ruled that such commentary, in the absence of accompanying argument, is unconstitutional. *Sherrod v. United States*, 478 A.2d 644, 654 (D.C.Ct.App.1984) ("This court has indicated it is impermissible for the prosecutor to comment in closing argument on appellant's exercise of his Sixth Amendment right to confront witnesses.... Accomplishing the same result by cross-examination is no less objectionable, since the prosecutor thereby can also seek to have the jury draw impermissible inferences from appellant's exercise of his constitutional right to confront witnesses.").[7] Our superior court has never directly addressed the issue. *See United States v. Carpenter*, 51 M.J 393 (1999).

We interpret the appellant's argument to be two-fold. First, with respect to the Fifth Amendment, the prosecutor's question improperly commented on his right to remain silent because it could lead the factfinder to incorrectly infer that the appellant should have revealed his story before the presentation of his case. Second, with respect to the Sixth Amendment, the question violated his right to confront witnesses because it inferred that his presence in the courtroom provided him with an unfair opportunity to

---

and cause of the accusation; [and] to be confronted with the witnesses against him...."
U.S. Const. Amend. VI.

**5.** The question presented is: "Whether it violates the Constitution for the prosecution to comment during closing argument that the defendant's opportunity to hear the testimony of all other witnesses before taking the stand enhanced his ability to fabricate testimony."

**6.** The Court of Appeals for the Second Circuit distinguishes between improper cross-examination by the prosecutor and improper jury argument:

On cross-examination, a prosecutor may legitimately question any witness about his opportunity and motivation to fabricate testimony.

Such questioning goes to the witness' credibility, and the witness is afforded an opportunity to respond and repair the attack. Summation remarks, however, occur too late for the witness to rehabilitate his credibility and may, as in this case, occur too late for even his attorney to respond to the attack.

*Agard*, 117 F.3d at 708 n. 6. *See also United States v. Chacko*, 169 F.3d 140, 149–50 (2d Cir. 1999).

**7.** Because no objection was made at trial, the court conducted a plain error analysis and found no plain error, where the prosecutor's question was not prominent during the cross-examination and was not intended to do more than explore the appellant's direct testimony about what had happened. *Sherrod*, 478 A.2d at 654.

tailor his testimony to match the evidence.[8] In essence, the appellant contends that the prosecution's question "improperly invited the members to infer guilt from the appellant's exercise of his constitutional right to testify and confront the witnesses against him." *Carpenter,* 51 M.J. at 396. After considering these arguments and the record, we conclude that the prosecutor's question did not invite the factfinder to draw inferences adverse to the appellant solely because of his exercise of constitutional rights.

When an accused chooses to testify, he subjects himself to the same rules and tests applied to other witnesses, and he must be prepared to withstand cross-examination as to his credibility. *Perry v. Leeke,* 488 U.S. 272, 282, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989); *Brown v. United States,* 356 U.S. 148, 154, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *Raffel v. United States,* 271 U.S. 494, 497, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); *Reagan v. United States,* 157 U.S. 301, 305, 15 S.Ct. 610, 39 L.Ed. 709 (1895). Opportunity and motive to fabricate testimony are permissible areas of inquiry of any witness. The appellant cannot both take the stand and be immune from impeachment. *Brown,* 356 U.S. at 155–56, 78 S.Ct. 622.

In this case, when the appellant took the stand in his own defense, he waived his right to remain silent and thereby subjected himself to cross-examination as to the credibility of his story. "The constitutional right ... to be present at trial and confront witnesses ... is not a right to be insulated from suspicion of manufacturing an exculpatory story consistent with the available facts." *State v. Smith,* 917 P.2d at 1112. Here, the prosecutor's question served to attack the credibility of the appellant's testimony by inferring that he was in a good position to conform his story to the evidence already presented.[9] It suggested that having heard all the evidence, the appellant could easily have fabricated a portion of his testimony. It did not focus on the exercise of a constitutional right itself, nor was it "of such a character as would naturally and reasonably be interpreted by the [factfinder] as penalizing [the appellant] for exercising his right to testify, or to confront the [Government's] witnesses." *People v. Wirts,* 178 A.D.2d 165, 577 N.Y.S.2d 24, 24 (N.Y.App.Div.1991). It did not comment on the appellant's right to remain silent, but rather asked the factfinder to consider the appellant's familiarity with the testimony of other witnesses as a factor in assessing his credibility as a witness. The question was linked to the evidence, rather than the appellant's presence at trial. The Government could have asked any other witness if that witness may have used his access to another witness' statement to fabricate his own.[10] By electing to testify, the appellant may not invoke his status as the accused to

---

8. One state court characterized this argument as follows:

> This method of discrediting a testifying defendant's version of the facts places the defendant between the horns of an intolerable dilemma: the defendant must decide to either present himself at trial and risk being discredited or absent himself from trial and avoid the risk. A defendant in this position cannot freely exercise his right to be present at trial.

*People v. Fredericks,* 125 Mich.App. 114, 335 N.W.2d 919, 922 (1983). The rationale for this argument was later undermined: "To accept defendants' argument that they much choose between exercising their right to be present at trial and some other right would be to say that a defendant has the right to fabricate or conform testimony without comment." *People v. Buckey,* 424 Mich. 1, 378 N.W.2d 432, 439 (1985).

9. "Where ... a defendant is required by law to be present in court while all the witnesses testify, I can discern no prejudicial constitutional error in a prosecutor's reference to the so-called 'benefits' inherent in such requirement. Such 'benefits,' which are not of the defendant's doing, must be obvious to every juror with a modicum of common sense." *Agard,* 159 F.3d at 101 (Van Graafeiland, J., dissenting). "... I am unable to even visualize a juror rising to his feet in the jury room and saying, 'If [the appellant] is innocent, he would not have·sat in the courtroom during the entire trial.'" *Agard,* 117 F.3d at 719 (Van Graafeiland, J., dissenting).

10. We note that an accused may be compelled at trial "to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "These procedures might be said to take advantage of the defendant's presence at trial, yet our research has disclosed no case which has held such procedures violative of the defendant's right to attend his trial." *Buckey,* 378 N.W.2d at 439.

avoid fair scrutiny as a witness. Accordingly, we hold that the question did not constitute error.

■ Even assuming *arguendo* that there was error, the appellant did not object to the question at trial, and the issue is waived in the absence of plain error. MIL.R.EVID. 103(a) & (d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). We find no plain error. *See* Art. 59(a), UCMJ; *United States v. Powell*, 49 M.J. 460, 461–65 (1998); *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986). Any error was not obvious and did not materially prejudice a substantial right of the appellant. We are also satisfied beyond a reasonable doubt that any error was harmless where (1) the single question at issue was not prominent in a lengthy cross-examination; (2) the defense did not object; (3) the prosecutor did not argue that any adverse inferences should be drawn from the appellant's exercise of his rights; (4) the Government's case was strong; and (5) the military judge, who was the factfinder, is presumed to know the law. *See United States v. Moore*, 1 M.J. 390, 391–92 (C.M.A.1976)(holding that if constitutional error were preserved, appellate court must reverse unless convinced that error was harmless "beyond a reasonable doubt"); *Carpenter*, 51 M.J. at 397 ("In a harmless error analysis, the lack of defense objection is relevant to a determination of prejudice."); *United States v. Raya*, 45 M.J. 251, 253 (1996)("[A] military judge is presumed to know and apply the law correctly.").

### Ineffective Assistance of Counsel

The appellant further claims that his two defense counsel (detailed and individual) were ineffective by failing to call favorable witnesses on the merits, failing to examine physical evidence, and failing to contact sentencing witnesses. We disagree.

■ The Supreme Court has established a two-pronged test for use in considering questions of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the appellant must show that counsel's performance was so deficient, the errors so serious, that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. In this regard, a strong, but rebuttable presumption exists that counsel has provided "adequate assistance." *Id.* at 690, 104 S.Ct. 2052. Second, the appellant must show that counsel's deficient performance prejudiced his ability to receive a fair trial. *Id.* at 687, 104 S.Ct. 2052. In determining whether the appellant was deprived of the effective assistance of counsel, we have considered the factual allegations supporting his claim in his various affidavits, the affidavits of both trial defense counsel, the record as a whole, and the admissions made by the appellant at trial and in his sworn statement to NCIS. *United States v. Ginn*, 47 M.J. 236, 248 (1997). We find no reason to order a *DuBay* hearing to resolve any factual conflicts in the affidavits. *Ginn*, 47 M.J. at 248. Each of the three allegations of ineffective assistance of counsel is reviewed below.

### 1. Failure to call witnesses on the merits.

■ At trial, the Government offered the testimony of several witnesses who stated that the appellant was wearing light colored clothing early in the evening of the incident, but wore dark colored clothing later in the evening. The appellant admitted wearing dark colored clothing at the time of the incident, but he denied that he had changed clothes and insisted that he had on dark colored clothes the entire evening. The Government argued that the change of clothes was part of the appellant's plan to avoid detection.

The appellant now contends that his counsel were ineffective because they did not present the testimony of two other witnesses who would have testified that he was wearing dark colored clothing all evening. In response, the trial defense counsel contend that they did interview one such witness, but he could not recall what the appellant was wearing that evening. Neither counsel recalls the accused mentioning the second witness.

From our review of the appellant's affidavits on this issue, he has failed to provide sufficient evidence to rebut the presumption

that his counsel rendered adequate assistance. Although the appellant offers a written statement from one of the witnesses indicating that the appellant was wearing "black pants/green shirt," the time and date of this observation are not provided,[11] and no information is provided about whether the green shirt was light or dark colored. The appellant provides no statement whatsoever from the second witness on this issue. We find such speculative or conclusory observations on the part of the appellant insufficient to overcome the presumption of competence. *See Ginn,* 47 M.J. at 248.

Even assuming there were witnesses who could have testified that the appellant did wear dark colored clothing all evening, the failure to produce these witnesses did not prejudice the appellant. The evidence is uncontroverted that the appellant wore dark clothes, dark shoes, dark gloves, and a concealed weapon in the middle of the night to the victim's barracks. The evidence is equally uncontroverted that the appellant put on the gloves for the first time that evening just before arriving at the victim's barracks room. Therefore, the Government's argument of a plan is every bit as strong, even with the evidence of the appellant changing from light to dark clothing negated. We conclude that there is no reasonable probability that the outcome in this case would have differed with the introduction of contrary evidence about the color of the clothing worn before the incident. *See Ginn,* 47 M.J. at 247.

**2. Failure to examine physical evidence.**

■ At trial, the Government called a physician's assistant who conducted a cursory visual exam of the appellant late in the morning of the alleged incident and performed a specimen collection. From his visual examination, he noticed that the appellant's pubic area was clean shaven. His testimony on the specimen collection included the following observations:

> It was very difficult to pull the 50 hairs that were required for the North Carolina specimen collection kit for males. I had to use tweezers. Even then, I had to actually forcefully dimple the skin to remove a sufficient quantity of hair. That hair was

maybe a millimeter at most. I would assume that he had shaved within a period of 24 to 36 hours prior to [the examination].

Record at 156. The victim testified that the appellant had pubic hair at the time of the incident. The appellant testified that for his job as a male stripper, he had been shaving his pubic area with a trimmer for about 6 months, but that the trimmer left the hair about a quarter of an inch long. He related that the last time he shaved his pubic area was about 7 to 14 days before the incident. In rebuttal to the appellant's testimony, the Government produced the testimony of one of the appellant's former lovers who stated that when she and the appellant had sexual intercourse in the month prior to incident, he had pubic hair. The Government argued that the appellant shaved his pubic hair to eliminate the possibility of hair seizure.

The appellant now contends that his counsel were ineffective because they failed to examine the pubic hair samples "that could have rebutted" the prosecution witnesses. His trial defense counsel admit that they did not examine the pubic hair samples, but contend that the appellant told them that he regularly shaved his pubic area (every couple of days) because he was a bodybuilder.

From our review of the appellant's affidavits on this issue, he has again failed to provide sufficient evidence to rebut the presumption that his counsel rendered adequate assistance. In his affidavits, he fails to allege that the pubic samples were any longer than that testified to at trial, and he also fails to provide any evidence that the samples were in fact any different from what had been described at trial. His speculative or conclusory observations are insufficient to overcome the presumption of competence. *See Ginn,* 47 M.J. at 248.

Even assuming that the pubic hair samples were closer to a quarter inch long than to one millimeter, the failure of his counsel to examine them did not prejudice the appellant. The evidence is uncontroverted that the appellant shaved his pubic area, whether the shaving took place directly after the incident or days before. We conclude that there

---

11. The appellant admits that he was seen by this witness at two different times, 1900 and 2300.

is no reasonable probability that the outcome in this case would have differed with the introduction of evidence about a miniscule difference in the length of pubic hair. *See Ginn,* 47 M.J. at 247. In any event, the evidence of record "compellingly demonstrates" the improbability of the facts asserted in appellant's affidavits. *Ginn,* 47 M.J. at 248.

### 3. Failure to call character witnesses on sentencing.

▮ Finally, the appellant contends that his trial defense counsel were ineffective because they failed to call character witnesses on sentencing. The trial defense counsel concede that they did not call any live character witnesses on sentencing, but claim they did not do so to avoid having those witnesses impeached with the appellant's past criminal record. "Such a strategy [ ] was tactically sound and not unreasonable." *United States v. Stephenson,* 33 M.J. 79, 82 (C.M.A.1991). In opting against calling live character witnesses, they precluded the Government from impeaching the witnesses with the appellant's past disciplinary record, which included civilian convictions for battery, entering and remaining after being forbidden, theft, aggravated assault, and assault on a female, a nonjudicial punishment for assault and battery, and a negative counseling entry for twice violating a magistrate's order. *See Stephenson,* 33 M.J. at 82. We will not second-guess a defense counsel's tactical judgments absent a compelling reason to do so. *United States v. Morgan,* 37 M.J. 407, 410 (C.M.A.1993); *United States v. Sanders,* 37 M.J. 116, 118 (C.M.A.1993). In this case, we do not find anything inherently problematic in what appears to us to be an adequate sentencing presentation. That presentation included various pages from the appellant's service record book, a written good military character statement from a noncommissioned officer, and the appellant's unsworn statement. The record book pages documented not only the appellant's service proficiency and conduct marks of 4.6/4.5, but also listed his several awards and commendations.

In summary, on the ineffective assistance of counsel issues, the appellant has failed to overcome the strong presumption of his counsel's competence. Based on our review of the entire record, we are convinced that counsel's performance did not fall below "prevailing professional norms." *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987). In addition, we find that the proceeding was fundamentally fair and reliable. *See Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. We find nothing remotely ineffective about the performance of the trial defense counsel, who litigated two suppression motions and presented a vigorous defense.

### Petition for New Trial

The appellant filed, *in propria persona,* a 67–page petition for a new trial. An accused may petition for a new trial on the ground of newly discovered evidence or fraud upon the court-martial. Art. 73, UCMJ; RULE FOR COURTS-MARTIAL 1210, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.); *see United States v. Brooks,* 49 M.J. 64, 68–69 (1998). After reviewing this petition and the entire record of trial, we find no newly discovered evidence or fraud on the court. The appellant merely wishes to relitigate the facts already before the court-martial or readily available to counsel prior to trial. Even if the appellant's purported newly discovered evidence had been presented at trial, it would not "probably produce a substantially more favorable result for the accused." R.C.M. 1210(f); *Brooks,* 49 M.J. at 70. We find no need to order a factfinding hearing under *United States v. Ginn, supra.* Accordingly, the appellant's petition for a new trial is denied.

### Sentence Appropriateness

▮ Finally, the appellant contends that his sentence is inappropriately severe. The appellant raped a junior female Sailor in the barracks after intimidating her with a loaded firearm. Aggravating the offenses are his history of violence and his status as a noncommissioned officer. *United States v. Thompson,* 22 M.J. 40, 41 (C.M.A.1986). Having carefully reviewed the entire record, we find that the sentence is appropriate in all respects for these offenses and this offender. *United States v. Healy,* 26 M.J. 394 (C.M.A.

1988); *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982).

## CONCLUSION

Accordingly, we affirm the findings and the sentence, as approved on review below.

Senior Judge LEO and Judge NAUGLE concur.