[No. 28671-1-III.   Division Three.   February 2, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. KEIR ALBERT WALLIN, *Appellant*.

*Eric J. Nielsen* and *Jennifer M. Winkler* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*D. Angus Lee*, *Prosecuting Attorney*, and *Edward A. Owens* and *Tyson R. Hill*, *Deputies*, for respondent.

¶1 SWEENEY, J. — Our Supreme Court recently held that the state may suggest that a defendant "tailored" his testimony based on what he heard at trial if the defendant opens the door to that suggestion. *State v. Martin*, 171 Wn.2d 521, 536-38, 252 P.3d 872 (2011). And we have recently held that an inquiry that suggests that testimony was "tailored" is proper to explain inconsistencies and contradictions between a defendant's testimony and earlier statements to police. *State v. Hilton*, 164 Wn. App. 81, 261 P.3d 683 (2011), *petition for review filed*, No. 86768-2 (Wash. Dec. 1, 2011). But here the State suggested that the defendant tailored his testimony based on nothing more than his presence at his trial. We conclude this was improper and we reverse and remand for a new trial.

## FACTS

¶2 The pertinent factual backdrop here begins with the trial of this case. But briefly, the charges stem from a July 1, 2009 traffic stop by Moses Lake police. An officer saw a van passenger riding without a seat belt. He stopped the van and got identification from the passenger, Keir Wallin, and the driver, Anthony Antone. Dispatch reported that Mr.

Wallin was an "officer safety risk." Report of Proceedings (RP) (Nov. 4, 2009) at 32. So the officer frisked Mr. Wallin and searched the front passenger area of the van. He found drugs and drug paraphernalia in a wooden box and he arrested Mr. Wallin for possession of these things.

¶3 The State charged Mr. Wallin with possession of cocaine, morphine, ecstasy, less than 40 grams of marijuana, and possession of drug paraphernalia. His case went to a jury trial. Mr. Wallin testified that the wooden box belonged to his friend, Mr. Antone. Mr. Wallin knew about the box because the two frequently smoked marijuana together and Mr. Antone stored his marijuana and pipe in the wooden box. Mr. Wallin said that he did not tell police that the box belonged to Mr. Antone because it was an "integrity loyalty issue between one friend to another." RP (Nov. 5, 2009) at 176. He also believed Mr. Antone would admit that the box belonged to him.

¶4 The prosecutor asked Mr. Wallin if having access to the other evidence in the case gave Mr. Wallin the opportunity to tailor his testimony to the other evidence:

Q. Mr. Wallin, you've had the advantage of being in the courtroom and hearing all the testimony so far, correct?

A. Yes, I have, sir.

Q. You've had the chance to know ahead of time what people were going to say before you took the stand?

A. No, not really. Could you elaborate, please?

Q. Before you took the stand, you had the opportunity to hear Sergeant Jones testify?

A. Yes.

Q. And to watch the video?

A. Yes.

Q. And to see the evidence that was admitted?

A. Yes. Today or yesterday.

Q. You had the opportunity to see the police reports?

A. Yes, I have.

RP (Nov. 5, 2009) at 177-78.

¶5 The jury convicted Mr. Wallin of all charges. Mr. Wallin appealed, arguing that the cross-examination violated his Washington state constitutional rights to appear and defend in person and to meet witnesses face to face. He filed his appellate brief in June 2010 and we stayed his appeal pending a decision in *Martin*. *Martin*, 171 Wn.2d 521. *Martin* was decided in May 2011 and the stay in this case was lifted in June 2011.

## DISCUSSION

¶6 Mr. Wallin concedes the applicability of *Martin*. The State responds that this ends the discussion. Mr. Wallin's claims that his constitutional right to be present at his trial, to confront witnesses, and testify on his own behalf are all compromised by allowing the State to suggest that he tailored his testimony when the record does not support such an inference. We review his claim of error de novo. *State v. Robinson*, 171 Wn.2d 292, 301, 253 P.3d 84 (2011).

¶7 Article I, section 22 of the Washington State Constitution guarantees the accused rights "to appear and defend in person" and "to testify in his own behalf." Our Supreme Court only recently passed on whether a prosecutor's suggestion that the defendant "tailored" his testimony violates rights guaranteed by article I, section 22 to confront witnesses and to appear and defend. In *Martin*, it held that such cross-examination does not violate a defendant's article I, section 22 rights if the defendant opens the door to that inquiry:

> Here Martin testified on direct examination about what time he was in the parking lot where the van was found as follows: "I would guess 11:30, 12:00, 12:30 at night. *From prior testimony, I know it had to be before one.*" [Verbatim Report of Proceedings] (Dec. 11, 2007) at 28. In our judgment, this testimony opened the door to questions on cross-examination about whether he tailored his testimony to evidence presented

by other witnesses. Prohibiting the kind of questioning that occurred here, where the defendant states that he based his testimony, in part, on testimony of other witnesses, would inhibit the jury's ability to judge credibility and thereby seek the truth. In sum, we believe that in a case such as the instant, where the credibility of the defendant is key, it is fair to permit the prosecutor to ask questions that will assist the finder of fact in determining whether the defendant is honestly describing what happened.

*Martin*, 171 Wn.2d at 536 (emphasis added). A five-justice majority of the court then concluded that Mr. Martin had opened the door to the prosecutor's suggestion that he tailored his testimony:

We conclude, therefore, that the State did not violate article I, section 22 by posing questions during cross-examination that were designed to elicit answers indicating whether Martin tailored his testimony.

. . . .

. . . We conclude, however, that our state constitution was not violated when a deputy prosecutor, *in response to testimony Martin had given on direct examination*, asked Martin if he had tailored his testimony to conform to testimony given by other witnesses.

*Id.* at 536, 537-38 (emphasis added).

¶8 The court's conclusions in *Martin* rely on the United States Supreme Court's decision in *Portuondo*. *Portuondo v. Agard*, 529 U.S. 61, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000). The prosecutor made the comments at issue in *Portuondo* during closing argument: " '[U]nlike all the other witnesses in this case the defendant has a benefit and the benefit that he has, unlike all the other witnesses, is he gets to sit here and listen to the testimony of all the other witnesses before he testifies. . . . That gives you a big advantage, doesn't it.' " *Id.* at 64. On appeal, the defendant argued these comments burdened his right to testify on his own behalf and to be present at trial. *Id.* at 65. He attempted to analogize these

rights to his right to *not* testify at trial—something that is clearly prohibited. *Id.* at 65-66.

¶9 A majority of the United States Supreme Court rejected the analogy and concluded that the rights are different for two reasons. *Id.* First, prohibiting comments on a defendant's rights to testify and be present at trial is not rooted in history. *Id.* Second, comments on a defendant's failure to testify go toward guilt, not dishonesty. *Id.* at 67-68. Comments on a defendant's failure to testify are prohibited when it is used as " 'evidence of guilt.' " *Id.* at 69 (emphasis omitted) (quoting *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)). Comments on a defendant's rights to be present at trial and testify on his own behalf, on the other hand, touch upon the defendant's credibility as a witness. *Id.* Witness credibility is important to the " 'truth-seeking function' " of trial and a defendant-witness is therefore treated like any other witness. *Id.* (quoting *Perry v. Leeke*, 488 U.S. 272, 282, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989)). The Court ultimately held that the prosecutor's comments did not violate the Sixth Amendment.

¶10 Justice Ruth Bader-Ginsburg dissented. She would have held that the comments violate the Sixth Amendment. *Id.* at 76 (Ginsburg, J., dissenting). She argued that the majority "transforms a defendant's presence at trial from a Sixth Amendment right into an automatic burden on his credibility." *Id.* According to the dissent, the prosecutor's comments violated the Sixth Amendment because the comments were generalized accusations. *Id.* at 77 (Ginsburg, J., dissenting). The dissent, however, suggested that a prosecutor pointing out specific instances of tailoring would not necessarily burden a defendant's credibility and would support a trial's truth-seeking function. *Id.* at 78 (Ginsburg, J., dissenting).

¶11 *Martin* addressed similar issues but applied Washington state constitutional principles. The State questioned Mr. Martin about what time he was at an industrial

complex. *Martin*, 171 Wn.2d at 524. Mr. Martin said, " 'I would guess 11:30, 12:00, 12:30 at night. From prior testimony, I know it had to be before one.' " *Id.* When asked what time he got into a van, Mr. Martin said, " 'I'm saying this time, because of prior testimony, that I heard, said that the shop was closed at 1:00 a.m., so it was before 1:00 a.m.' " *Id.* The prosecutor then cross-examined Mr. Martin on his ability to tailor his testimony:

"A. Obviously I have been sitting in that seat the whole time, yes.

"Q. And you've also had the advantage of knowing what people were going to say ahead of time, wouldn't you agree with me?

"A. No, I didn't know what anybody was going to say ahead of time.

"Q. You didn't get to read the police reports?

"A. I got to read the police reports.

"Q. And you didn't get to read witness statements?

"A. I read witness statements, yes.

"Q. And you weren't allowed to bring those reports and statements with you to court?

"A. I read everything involved, yes.

"Q. And you've had what, a little over a year to concentrate on what people were going to say, didn't you?"

. . . .

"A. I've read the police reports, I've read your discovery, yes.

"Q. And you've heard all the testimony so far?

"A. So far, yes.

"Q. And so you knew all that before you testified?

"A. Yes."

*Id.* at 525.

¶12 The court conducted a *Gunwall*[1] analysis and concluded that the Washington State Constitution granted

---

[1] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

broader rights than the United States Constitution. *Id.* at 528-29. Article I, section 22 then warranted an independent analysis after applying the first four *Gunwall* factors. *Id.* at 533. It then considered whether article I, section 22 prohibits a prosecutor from suggesting in cross-examination that a defendant tailored his testimony. *Id.* at 533-34. The court accepted Justice Ginsburg's dissent in *Portuondo* as controlling. *Id.* at 535-36. The majority reasoned that tailoring is an appropriate topic for cross-examination because cross-examination (not closing argument) is "when the jury has the opportunity to determine whether the defendant is exhibiting untrustworthiness." *Id.* at 536. The court then concluded that the defendant's article I, section 22 rights had not been violated by the prosecutor's cross-examination. *Id.*

¶13 Justice Debra Stephens wrote for three justices who concurred in part and dissented in part. *Id.* at 538-42. They would have concluded that the defendant's article I, section 22 rights were violated but affirmed, nevertheless, because the evidence of guilt there was overwhelming. *Id.* These justices agreed with Justice Sanders' dissent. *Id.* at 541 (Stephens, J., concurring/dissenting). In a dissent, Justice Sanders urged that cross-examination implying tailoring "demean[ed]," rather than supported, the trial's truth-seeking function. *Id.* at 546-47. He urged that the suggestion of tailoring implies that "all defendants are less believable simply as a result of exercising [article I, section 22] rights." *Id.* at 546 (Sanders, J., dissenting).

¶14 The *Martin* court concluded "that Justice Ginsburg's view, that suggestions of tailoring are appropriate during cross-examination, is compatible with the protections provided by article I, section 22." *Id.* at 535-36. And Mr. Martin's testimony "opened the door" to cross-examination that suggested tailoring. *Id.* at 536. But the court did not "decide whether generic accusations are prohibited under article I, section 22" because "the accusation of tailoring in this case was specific rather than generic." *Id.* at 536 n.8.

The *Martin* court decided only that examination suggesting tailoring is generally compatible with article I, section 22. *Id.*

¶15 Since the *Martin* decision, we have also held that the State's suggestions that a defendant tailored his testimony did not violate article I, section 22. *Hilton*, 164 Wn. App. at 96 (citing *Martin*, 171 Wn.2d at 536). There the defendant also "opened the door" to cross-examination about tailoring during a second trial because he changed his alibi after sitting through his prior trial. *Id.*

¶16 Mr. Wallin did not "open the door" to such cross-examination. He did not testify that he had based any of his answers on what he learned from the evidence. Nor was that a fair inference. RP (Nov. 5, 2009) at 147-209.

¶17 Washington case law before *Martin* provided that "[t]he State can take no action which will unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right." *State v. Rupe*, 101 Wn.2d 664, 705, 683 P.2d 571 (1984) (reversing death sentence because the State drew an adverse inference from defendant's legal gun possession). *Rupe* addressed article I, section 24 of this state's constitution. *Id.* at 706. In *State v. Johnson*, *Rupe* was applied in the Sixth Amendment context. *State v. Johnson*, 80 Wn. App. 337, 341, 908 P.2d 900 (1996), *abrogated by Portuondo*, 529 U.S. 61. In *Johnson*, the court concluded a prosecutor's closing argument infringed on a defendant's Sixth Amendment right because the prosecutor "did not merely argue inferences from the defendant's testimony, but improperly focused on the exercise of the constitutional right itself." *Id.*

¶18 In *State v. Smith*, the court applied *Johnson*, and *Rupe* by extension, again in the Sixth Amendment context. *State v. Smith*, 82 Wn. App. 327, 334-35, 917 P.2d 1108 (1996). There the prosecutor cross-examined the defendant on his ability to tailor his testimony. During the defendant's direct examination, counsel referred to photographs of an

apartment where the crime happened and the defendant testified that the victim had two to three glasses of wine. *Id.* at 334. On cross-examination, the prosecutor asked, " 'So before you decided to testify that [the victim] had two to three glasses of wine out of that bottle, you had a chance to see that that bottle wasn't all the way full, didn't you?' " *Id.* The prosecutor continued, " 'Isn't it fair to say that after you looked at all the photographs in the case and you had a chance to read the discovery and see what people were going to say and hear what they had to testify to, it was only then that you crafted your story?' " *Id.* The court concluded that these questions "raised an inference from Smith's testimony" rather than " 'focus[ing] on the exercise of the constitutional right itself.' " *Id.* at 335 (quoting *Johnson*, 80 Wn. App. at 341).

¶19 Once *Portuondo* was decided, the court concluded that "*Portuondo* effectively overrules *Johnson* and *Smith* insofar as they state a different rule." *State v. Miller*, 110 Wn. App. 283, 285, 40 P.3d 692 (2002). But "[a] later holding overrules a prior holding sub silentio when it directly contradicts the earlier rule of law." *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009). *Miller*, *Smith*, and *Portuondo* all address federal constitutional provisions. *Miller*, 110 Wn. App. at 284; *Smith*, 82 Wn. App. at 334; *Portuondo*, 529 U.S. at 66. In *Miller*'s context, *Portuondo* overruled *Smith* because both cases address the United States Constitutions' Sixth Amendment. However, *Miller* does not directly contradict *Smith* and *Johnson* insofar as the reasoning of *Johnson* and *Smith* still make sense when state constitutional law is applied. And it seems to us that the reasoning in *Johnson* and *Smith* could apply to state law. Likewise, *Martin*'s holding, limited to cross-examination on specific instances of tailoring, does not directly contradict *Johnson* and *Smith* insofar as they address "generic tailoring"—suggestions by the State that the defendant tailored his testimony simply because he showed up for trial.

¶20 The prosecutor in Mr. Wallin's case went further than asking about inferences from Mr. Wallin's testimony. The prosecutor asked him directly about "the advantage of being in the courtroom and hearing all of the testimony so far." RP (Nov. 5, 2009) at 177. The focus of this question clearly followed from Mr. Wallin's exercise of his article I, section 22 rights to confront witnesses face-to-face and to appear and defend himself. Under *Smith*, this cross-examination would be prohibited. *Smith*, 82 Wn. App. at 335.

¶21 A handful of other states have addressed the issue of tailoring. None is completely on point but cases out of New Jersey, Minnesota, and Hawaii are helpful. *State v. Daniels*, 182 N.J. 80, 99-100, 861 A.2d 808 (2004); *State v. Swanson*, 707 N.W.2d 645, 657 (Minn. 2006); *State v. Mattson*, 122 Haw. 312, 326, 226 P.3d 482 (2010).

¶22 Courts in New Jersey, Hawaii, Colorado, Massachusetts, Vermont, and Minnesota have concluded that cross-examination or closing argument suggesting that testimony was tailored is permissible only if there is specific evidence of tailoring. *See Daniels*, 182 N.J. at 99 (explaining that a prosecutor can cross-examine a defendant on tailoring only when there is evidence suggesting tailoring and if the prosecutor does not reference defendant attending trial and hearing prior witness testimony); *Mattson*, 122 Haw. at 326; *Martinez v. People*, 244 P.3d 135, 141-42 (Colo. 2010); *Commonwealth v. Gaudette*, 441 Mass. 762, 767-68, 808 N.E.2d 798 (2004); *State v. Hemingway*, 148 Vt. 90, 528 A.2d 746 (1987); *Swanson*, 707 N.W.2d at 657. These cases are then consistent with the majority's holding in *Martin*.

¶23 In *Mattson*, the Hawaii Supreme Court addressed whether closing argument on generic tailoring violated the state constitution. 122 Haw. at 326. It relied on *Portuondo*'s dissent to reason "that generic accusations of tailoring during closing argument that are based only on a defendant's presence throughout the trial burden the defendant's constitutional right to be present at trial and could discourage a defendant from exercising his constitutional right to

testify on his own behalf." *Id.* It concluded that the Hawaii constitutional right to confrontation would prohibit such argument but would accommodate argument based on evidence of tailoring in the record. *Id.* at 326-27. The Hawaiian confrontation clause guarantees the right " 'physically to face those who testify against him,' " among other rights. *Id.* at 325 (quoting *State v. Peseti*, 101 Haw. 172, 180, 65 P.3d 119 (2003)).

¶24 Other cases address the propriety of comments made during closing argument and are not helpful. *Martinez*, 244 P.3d at 140; *Hemingway*, 148 Vt. 90; *Gaudette*, 441 Mass. at 767. Those cases rely on the rule that "closing argument should be based on the evidence in the record and all reasonable inferences to be drawn therefrom." *Martinez*, 244 P.3d at 140; *see also Hemingway*, 148 Vt. at 90; *Gaudette*, 441 Mass. at 767. Cross-examination on conduct probative of truthfulness need not be supported by evidence in the record. ER 608(b). So the reasoning in the closing argument cases does not directly apply to Mr. Wallin's complaints here on appeal.

¶25 New Jersey and Minnesota shared the same analysis to craft a rule that the State's suggestion that the defendant tailored his testimony based on nothing more than his presence in the courtroom was improper. *Daniels*, 182 N.J. 80; *Swanson*, 707 N.W.2d 645. Neither held that it was unconstitutional; both states accepted the United States Supreme Court's invitation to create a rule prohibiting the practice. *Daniels*, 182 N.J. at 95-96; *Swanson*, 707 N.W.2d at 657-58. Both reason that a criminal defendant is not like other witnesses because criminal defendants have constitutional rights that other witnesses do not have. *Daniels*, 182 N.J. at 97; *Swanson*, 707 N.W.2d at 657-58. Allowing a prosecutor to cross-examine a defendant on tailoring when there is no evidence of it uses the defendant's constitutional rights to hurt rather than help him. *Daniels*, 182 N.J. at 98-99; *Swanson*, 707 N.W.2d at 658.

¶26 Connecticut, New York, the District of Columbia, and Missouri have all held that cross-examination or clos-

ing argument bringing up the defendant's ability to tailor his testimony is not a constitutional violation. *See State v. Alexander*, 254 Conn. 290, 297, 755 A.2d 868 (2000) (explaining that a defendant cannot take the stand and not have his credibility impeached); *People v. King*, 293 A.D.2d 815, 817, 740 N.Y.S.2d 500 (2002) ("[A] defendant has the opportunity to rebut the insinuation through further testimony or introduction of a prior consistent statement."); *Teoume-Lessane v. United States*, 931 A.2d 478, 494-95 (D.C. 2007); *State v. Norville*, 23 S.W.3d 673, 685-86 (Mo. Ct. App. 2000). These cases, however, apply the federal constitution, not a state constitution. So again, these cases are not helpful here.

¶27 *Mattson* (Hawaii), *Daniels* (New Jersey), and *Swanson* (Minnesota) are helpful. Like Washington's constitution, Hawaii's constitution protects a defendant's right to confront witnesses face to face. *Mattson*, 122 Haw. at 325. So, it could be said that at least one other state has prohibited comments suggesting generic tailoring because they infringe on a defendant's constitutional right to confront witnesses face-to-face. However, *Mattson* does not address cross-examination so its facts are not completely analogous. *Id. Daniels* and *Swanson* both address cross-examination; however, they do not rely on state constitutional law. *Daniels*, 182 N.J. at 95-96; *Swanson*, 707 N.W.2d at 657-58. They rely on their ability to fashion a trial practice rule, which is not something that we could do.

¶28 These cases, nevertheless, help clarify that cross-examination that generically suggest to the jury tailoring, rather than a specific showing of tailoring, abridges a defendant's rights to be present at trial and testify. Cross-examination based on a specific showing that the defendant tailored his testimony does not run afoul of rights guaranteed by state constitutions; it is questioning based upon something the defendant voluntarily puts into evidence. *Martin*, 171 Wn.2d at 536. This seems to be the holding in *Martin*, which again was limited to specific tailoring cross-examination.

¶29 Ultimately, Mr. Wallin's presence at his trial, the presence that prompted the State's inquiry, was the result of an obligation and a right. He had the obligation to show up for his trial or, we assume, the judge and the prosecutor would have been very unhappy and may even have issued a bench warrant for his arrest. And he had a constitutional right under both federal and state constitutions to confront witnesses and participate in his own defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Why then should he be subject to the State's suggestion—unfounded on this record—that he tailored his testimony?

¶30 Here there is no showing that Mr. Wallin had any opportunity to "tailor" his testimony other than showing up for trial. We reverse and remand for new trial.

BROWN and SIDDOWAY, JJ., concur.