**FILED**
**JUNE 25, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36223-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STAFONE NICHOLAS FUENTES, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Stafone Fuentes appeals his convictions for attempted first degree murder and first degree assault. We affirm the convictions but remand with instructions to strike the $200 criminal filing fee from the judgment and sentence.

FACTS

In February 2013, Titus Davis and Lamont O'Neal were shot several times while seated in a car outside of Spokane's Knitting Factory, an event venue. Both Mr. Davis and Mr. O'Neal survived, but neither was able to identify the shooter. Mr. Davis saw the shooter from behind as he ran down an alleyway. Mr. Davis sensed the shooter was someone familiar, but there was nothing specific.

No strong leads developed until the federal government brought charges against a Spokane-area drug trafficking ring. One of the defendants named in the federal case was Stafone Fuentes. The informant in the federal case reported that during his undercover work, Mr. Fuentes had confessed to the Knitting Factory shooting.

While the federal case was pending resolution, several indicted co-conspirators came forward with information about the shooting. Deandre Gaither told law enforcement that Mr. Fuentes had not only confessed to the shooting but that he had also swapped the firearm used in the shooting for a clean gun owned by an individual named Jason Jones. Mr. Jones confirmed this information. Mr. Jones was present during Mr. Fuentes's confession as well as the gun swap. Mr. Jones told law enforcement he still had the gun provided to him by Mr. Fuentes. Law enforcement was able to recover the gun and testing revealed it was the one used in the shooting.

Both Mr. Gaither and Mr. Jones provided information regarding Mr. Fuentes's motive for the shooting. They claimed Mr. Fuentes was angry with Mr. Davis because Mr. Davis had interactions with Mr. Fuentes's girlfriend that Mr. Fuentes found suspicious.

Mr. Gaither and Mr. Jones pleaded guilty in the federal drug case pursuant to cooperation agreements. The agreements required Mr. Gaither and Mr. Jones to provide

truthful testimony regarding the shooting. In return, Mr. Gaither and Mr. Jones received substantially reduced prison sentences.

An additional co-conspirator in the federal drug case was Mr. Fuentes's girlfriend, Cierra White. Ms. White talked to the authorities two times before finally implicating Mr. Fuentes in the Knitting Factory shooting. Ms. White explained she had not originally come forward with information against Mr. Fuentes because she was acting under Mr. Fuentes's direction. Prior to her arrest, Ms. White worked for Mr. Fuentes as a prostitute and she described him as physically abusive.

According to Ms. White's final explanation, she was with Mr. Fuentes at the Knitting Factory on the night of the shooting. The two were in a car together and got into an argument. Things became physical and Mr. Fuentes hit Ms. White with a gun. Mr. Fuentes then left the car and walked down the alley toward an apparent fight. Shortly thereafter, Ms. White heard gun shots and then saw Mr. Fuentes running back to the car. Ms. White was with Mr. Fuentes the next morning during a news report of the shooting. Upon seeing the report, Mr. Fuentes commented Mr. Davis should have been dead.

The State charged Mr. Fuentes with one count of conspiracy to commit murder in the first degree and two counts of attempted murder in the first degree with firearm enhancements and alternatives of first degree assault. After the first trial ended in a hung

jury, the State dismissed the conspiracy charge. Mr. Fuentes then went to trial and was convicted of attempted murder on the charge involving Mr. Davis and assault in the first degree on the charge pertaining to Mr. O'Neal. Mr. Fuentes was sentenced to life imprisonment without the possibility of parole. The court also imposed several legal financial obligations.

Mr. Fuentes appeals.

## ANALYSIS

*Other suspect evidence*

Mr. Fuentes contends the trial court violated his constitutional right to present a defense by preventing him from presenting "other suspect" evidence at trial. Other suspect evidence should generally be admitted if relevant and not overly prejudicial. *State v. Franklin*, 180 Wn.2d 371, 378-79, 325 P.3d 159 (2014). Relevance is established if proffered evidence tends to connect someone other than the defendant with the crime. *Id*. Mere speculation does not meet this standard. *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004). A trial court's decision to exclude other suspect evidence is reviewed for abuse of discretion. *Id*. at 856.

Prior to trial, Mr. Fuentes proffered the following other suspect evidence: He claimed an individual named Kenneth Budik had a motive to harm Mr. Davis, given Mr.

Davis had previously been acquitted of crimes against Mr. Budik and his associates. Although Mr. Fuentes lacked evidence that Mr. Budik ever threatened Mr. Davis or that Mr. Budik was actually present at the Knitting Factory on the night of the shooting, Mr. Fuentes claims there was evidence Mr. Budik could have been present and therefore might have been the shooter. Mr. Fuentes proffered that Mr. Budik matched the description of the shooter, as a light-skinned black male. In addition, on the night of the shooting, a car similar to one associated with Mr. Budik was observed at the Knitting Factory, members of Mr. Budik's gang (the "8-Trey") were seen at the venue, and Mr. Davis was seen interacting with one of the gang members. Clerk's Papers at 186-87, 192. Prior to the shooting, Mr. Davis received a text message from an individual who was associated with one of the victims from the criminal case involving Mr. Budik. The individual asked Mr. Davis if he was at the Knitting Factory. Although it was not unusual for Mr. Davis to be in contact with this individual, he thought the text was unusual because he had never mentioned his plans to go to the Knitting Factory.

We find no abuse of discretion in the trial court's conclusion that the aforementioned proffer was overly speculative. While Mr. Fuentes presented evidence of motive, there was nothing else. There was no evidence indicating Mr. Budik harbored ill-will against Mr. Davis. Nor was there any evidence Mr. Budik knew or associated with

5

any of the individuals in contact with Mr. Davis on the night of the shooting. Although

Mr. Budik may have matched the description of a light-skinned black male, the

description was too general to point to Mr. Budik. Mr. Fuentes's theory that Mr. Budik

was the shooter is based on nothing more than a series of speculative inferences. As such,

it did not merit presentation to the jury.

*ER 404(b) evidence*

Mr. Fuentes contends the trial court abused its discretion by allowing Ms. White's

testimony about her abusive relationship with Mr. Fuentes and her characterization of Mr.

Fuentes as her pimp. The trial court did not perform an explicit ER 404(b) analysis as

required by our case law. *State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

Nevertheless, the record is sufficient to permit an independent analysis and affirm the trial

court's decision. *See State v. Barragan*, 102 Wn. App. 754, 759, 9 P.3d 942 (2000)

(reviewing ER 404(b) factors when the trial court failed to conduct a complete inquiry).

The admission of other act evidence under ER 404(b) turns on four steps:

(1) finding by a preponderance of the evidence that the act occurred, (2) identification

of a proper noncharacter purpose for the evidence, (3) determination that the evidence

is relevant to prove an element of the crime charged, and (4) an assessment that the

probative value of the evidence outweighs its potential prejudice. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

The other act evidence at issue here readily meets all four components. Ms. White's testimony provided sufficient evidence that Mr. Fuentes served as Ms. White's pimp and subjected her to abuse. The evidence was relevant for the noncharacter purpose of explaining why Ms. White initially lied to police. Establishing Ms. White's credibility was important because she was a percipient witness to the events immediately prior to and after the shooting. And given the brevity of the testimony regarding prostitution and abuse,[1] admission of Ms. White's testimony was not overly prejudicial.

Mr. Fuentes also complains the trial court did not provide a limiting instruction regarding Ms. White's testimony. However, he did not request a limiting instruction. We will not fault the trial court for failing to issue an instruction sua sponte. *State v. Russell*, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011).

Brady *violation and the right of cross-examination*

Mr. Fuentes claims the State violated its obligations to turn over exculpatory information, as required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed.

---

[1] The only detailed allegation involved Ms. White's testimony that Mr. Fuentes hit her with a gun immediately prior to the shooting. This portion of Ms. White's testimony was res gestae evidence and was not subject to a ER 404(b) analysis.

2d 215 (1963), when it failed to turn over unsealed plea agreements pertaining to Mr. Gaither and Mr. Jones. This claim fails for multiple reasons. Most fundamentally, the record indicates the State did not have any unsealed plea agreements to provide. The plea agreements in question were generated by the federal government and were sealed by a federal judge. *Brady* only requires the State to turn over exculpatory evidence in its possession or control. It does not require the State to obtain exculpatory evidence from a third party. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011). In addition, Mr. Fuentes has not explained how the failure to disclose unsealed plea agreements negatively impacted his case. Mr. Fuentes's attorney extensively cross-examined Mr. Gaither and Mr. Jones about their plea agreements and the benefits derived therefrom. Mr. Gaither and Mr. Jones were forthcoming regarding the contents of their plea agreements. It is unclear what further information would have been available if the plea agreements had been unsealed and available for publication to the jury.

*Tailored testimony*

During cross-examination, the following exchange occurred between the State and Mr. Fuentes:

| [PROSECUTOR:] | Okay. Now, you, also, had opportunities numerous times to watch Mr. Gaither and Mr. Jones and Ms. White testify, correct? |
|---|---|
| [MR. FUENTES:] | Yes. |

[PROSECUTOR:] And you've had numerous opportunities to tailor your testimony today; have you not?

MR. WALL: Objection, Your Honor.

THE COURT: I'm going to sustain it to the form of the question.

[PROSECUTOR:] You've watched them testify numerous times, correct?

[MR. FUENTES:] Yeah.

[PROSECUTOR:] And you actually had opportunities to testify before, haven't you?

[MR. FUENTES:] In this case?

[PROSECUTOR:] Yeah.

[MR. FUENTES:] Yes, retrial.

[PROSECUTOR:] Okay. And your testimony today is different than your first testimony; is it not?

[MR. FUENTES:] In what respect?

[PROSECUTOR:] I'm asking you a question.

[MR. FUENTES:] I'm—in what respect? That's what I'm wondering.

[PROSECUTOR:] You testified to a lot more things last time you testified; did you not?

[MR. FUENTES:] You guys asked me different things.

3 Report of Proceedings (June 25, 2018) at 1255.

Mr. Fuentes contends the State violated his constitutional right to presence by asking about whether he had tailored his trial testimony. *See State v. Wallin*, 166 Wn. App. 364, 377, 269 P.3d 1072 (2012). We agree that the State's question on tailoring was improper. Mr. Fuentes never opened the door to the subject of tailoring. Thus, the State had no grounds for asking a generic tailoring question. *Id*.

While the State's question was improper, it is unclear whether it amounted to constitutional error. The trial court sustained an objection immediately after the State's

question, prior to any testimony. Although there was no order to strike, the prosecutor's unanswered question was not evidence and it did not amount to legal argument.

To the extent the State's mere mention of tailoring was constitutional error, this irregularity was harmless beyond a reasonable doubt. The idea of tailoring was only mentioned once and it had no obvious application to Mr. Fuentes's testimony or credibility. Given that the trial court sustained Mr. Fuentes's tailoring objection and the prosecution presented overwhelming evidence of guilt, we will not disturb the jury's verdict.

*Legal financial obligations*

Fuentes contends, and the State concedes, that the sentencing court erred by ordering Fuentes to pay the $200 criminal filing fee because he is indigent as defined by RCW 10.101.010(3)(a) through (c). RCW 36.18.020(2)(h). We accept the State's concession and remand to the sentencing court to strike the criminal filing fee.

*Persistent offender*

Fuentes contends the court erroneously classified him as a persistent offender without putting the issue to a jury. We disagree for the reasons set forth in *State v. Williams*, 156 Wn. App. 482, 496-99, 234 P.3d 1174 (2010).

No. 36223-0-III
*State v. Fuentes*

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Fuentes has filed a lengthy statement of additional grounds for review (SAG), most of which consists of a running commentary of the trial, annotated with criticisms of the State's case. The narrative nature of the SAG, which at times is only loosely grounded in specific claims of error, inhibits our review. *See* RAP 10.10(c) (SAG need not include citation to authorities, but must "inform the court of the nature and occurrence of alleged errors."). To the extent we can discern Mr. Fuentes's claims, he is not entitled to relief.

*Other suspect evidence*

Mr. Fuentes reiterates his counsel's arguments regarding the exclusion of other suspect evidence. This claim does not merit further analysis. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

*Rule of completeness*

Mr. Fuentes complains the trial court erroneously refused to introduce an audio recording of Mr. Davis's pretrial interview with detectives. The contents of the recording are not part of the record. Given this circumstance, we cannot assess the admissibility of the recording or any prejudice from its exclusion. The proper vehicle for raising this issue is a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

11

*Prosecutorial misconduct, vouching, and opinion testimony*

Mr. Fuentes contends the State committed prosecutorial misconduct in multiple instances including: (1) the State refused to provide information about the confidential informant, (2) the State purposely made Fuentes unavailable for trial, (3) during 23 points in trial the State made improper comments or objections, and (4) during 10 points in trial the State either engaged in vouching or presented improper opinion testimony.

The record is insufficient to support Mr. Fuentes's first two claims. Any recourse must be sought through a personal restraint petition. *Id.*

With respect to allegations of improper comments, alleged vouching, and opinion testimony, the majority of the assignments of error pertain to comments and testimony that did not generate an objection. We will not reverse on allegations of prosecutorial misconduct unless the comments were so flagrant and ill intentioned that they could not have been remedied by a curative instruction. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). Similarly, an unpreserved claim of constitutionally defective opinion testimony will not merit review under RAP 2.5 unless the impropriety is "nearly explicit." *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007). Neither standard is met.

Mr. Fuentes also points to areas in the record where defense counsel successfully objected to the State's comments and questions. Here, we do not discern a basis for

complaint. Although the contested questions or comments were not accompanied by an order to strike or a curative instruction, none was requested. Given these circumstances, Mr. Fuentes's criticisms are not fertile ground for appeal.

Finally, Mr. Fuentes points to four instances where the State objected to testimony. He suggests this was misconduct but we disagree. The State does not commit misconduct merely by stating an objection, regardless of whether the objection is successful. Mr. Fuentes's criticism of the State in this regard fails.

*Impartiality doctrine*

Mr. Fuentes contends the trial court's adverse legal rulings are indicative of bias. We disagree. Most of Mr. Fuentes's assignments of error are unsuccessful. A trial court does not exhibit bias by issuing proper legal rulings.

*Deoxyribonucleic acid (DNA) collection fee*

Mr. Fuentes contends the trial court erroneously assessed a $100 DNA collection fee at sentencing. We disagree. There was no assessment of a DNA fee.

*Cumulative error*

Mr. Fuentes contends the trial court's multiple errors entitle him to relief under the cumulative error doctrine. We disagree. Our review of the record indicates only one

13

possible trial error (pertaining to tailoring testimony) that was preserved for review. The cumulative error doctrine is inapplicable.

## CONCLUSION

The judgment of conviction is affirmed. This matter is remanded with instructions to strike the $200 criminal filing fee from Mr. Fuentes's judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.

Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

14